**HUMPHREYS, HUTCHESON & MOSELEY**

v.

**Raymond J. DONOVAN, Secretary of Labor.**

**No. 78–3450.**

United States District Court, M.D. Tennessee, Nashville Division.

June 22, 1983.

James V. Doramus, Neal & Harwell, Nashville, Tenn., for plaintiff.

June Rose Carbone, Dept. of Justice, Washington, D.C. (Briefs), R. John Seibert and Brian N. Smiley, Washington, D.C., for defendant.

## MEMORANDUM

JOHN T. NIXON, District Judge.

This action seeking a declaratory judgment and injunctive relief presents novel and sensitive issues under sections 203(b) and 204, 29 U.S.C. § 433(b) and § 434 of Title II of the Labor Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. §§ 401 *et seq.* Among other things, § 203 requires disclosure and reporting of certain information by every person involved in labor persuader activities and § 204 provides an exemption to attorneys from the disclosure and reporting requirements of § 203 for information obtained in the course of a legitimate attorney-client relationship. Jurisdiction over this dispute is conferred upon this Court pursuant to 28 U.S.C. §§ 1331, 1337 and 1345 and § 210 of the LMRDA, 29 U.S.C. § 440 and has not been disputed. Both parties, agreeing that this case may be disposed of on summary judgment have so moved pursuant to Fed. R.Civ.P. 56, seeking final disposition of this case. This Court finding the material issues of fact undisputed concludes, for the reasons that follow, that judgment will enter in favor of the defendant Secretary of Labor[1] and the plaintiff will be ORDERED to comply with § 203(b).

### I.

The facts are not in dispute. The plaintiff is the Chattanooga, Tennessee law firm of Humphreys, Hutcheson & Moseley, which has a significant labor law practice. Affi-

---

1. The pleadings in this case are hereby amended to reflect that Raymond J. Donovan has succeeded Ray Marshall as Secretary of Labor.

davit of Hal F.S. Clements (October 24, 1978). In 1977 one of the plaintiffs' clients, Southern Silk Mills, Inc., located in Spring City, Rhea County, Tennessee, was facing a National Labor Relations Board (NLRB) conducted election. The purpose of that election was to determine whether Southern Silk Mills' employees would be represented by the Amalgamated Clothing and Textile Workers Union (ACTWU), a labor organization. The plaintiff represented Southern Silk Mills before the NLRB and assisted in reaching agreements concerning the time, place and date of the election and describing the bargaining unit involved. Southern Silk Mills, its employees and the Union engaged in a campaign over the question of unionization.

The parties stipulate that prior to the NLRB election, William P. Hutcheson and Ray H. Moseley, partners in the law firm of Humphreys, Hutcheson and Moseley, made speeches to several groups of Southern Silk Mill employees. These speeches were made pursuant to an agreement or arrangement between Southern Silk Mills and the plaintiff, the object of which was to persuade employees of Southern Silk Mills to vote against the union in the upcoming NLRB election. Stipulation, Government's Exhib-

it B. Because of Mr. Moseley's prior experience involving a strike by the Textile Workers Union, which is the predecessor to the Amalgamated Clothing & Textile Workers Union, Southern Silk Mills selected him to address its employees on the union's prior activities. Mr. Moseley was introduced as an attorney in the law firm representing Southern Silk Mills.[2] He related the events involving the Union as set forth by the United States District Court in *Kayser-Roth Corp. v. Textile Workers Union of America, AFL–CIO,* 347 F.Supp. 801 (E.D. Tenn.1972), *aff'd,* 479 F.2d 524 (6th Cir.), *cert. denied,* 414 U.S. 976, 94 S.Ct. 292, 38 L.Ed.2d 219 (1973), in which the court assessed damages against the Union for unlawful strike activity.[3] Mr. Hutcheson also spoke on the union violence in the *Kayser-Roth* case and reiterated the need to reject the union, as did Mr. Moseley. *See, e.g.,* Secretary's Exhibit G. at 15–16.

The plaintiff has refused to comply with the disclosure and reporting requirements of § 203(b), 29 U.S.C. § 433(b), and mounts several challenges against application of § 203(b) to its labor persuader activities. First, the plaintiff argues that § 203(b) does not apply to it because the intent of Congress when enacting the statute was to

---

**2.** On November 19, 1977, before the NLRB election, Mr. William Hilleary, Jr., Southern Silk Mills' vice-president and general manager, introduced Mr. Moseley. He said:

Ray Moseley is going to talk to us next about the Kayser-Roth strike. And the reason we are making such to-do in trying to give you the facts—most of you weren't old enough to really remember the Kayser-Roth strike. It was a terrible thing, it was 1968. It was the same union. It was the Textile Workers Union of America and they merged last year with Amalgamated Workers and they formed this present union, Amalgamated Clothing and Textile Workers. It was the same people, and the things that went on down there just absolutely is enough to turn your stomach inside out. And Ray Moseley was there, he knows the facts and he's going to tell you about some of them and he's also going to—show you some film that was taken during the strike down there just to show you what did take place.

Plaintiff's Answer to Defendant's Request to Admit No. 8.

**3.** Although Mr. Moseley's speech related the court's findings of fact in the *Kayser-Roth* case, the Secretary accurately points out that Mr. Moseley's speech included comments attacking directly the motives of ACTWU leaders, Secretary's Exhibit F. at 2, describing ACTWU leaders as "nightriders", Secretary's Exhibit J. at 19–20 and Exhibit H. at 9, "great marvelors, courageous, cowards from New York," Secretary's Exhibit G. at 6, "a wicked breed of cat," Secretary's Exhibit G. at 2, and "infidels," Secretary's Exhibit J. at 25. Moreover, for example, at one point in his speech, the Secretary emphasizes that Mr. Moseley stated as follows:

"Do you feel that you are as intelligent as people from New York, in other words, do you feel that the Good Lord somehow when he had people be born and live in New York gave them more goodies than he gave us— more decency, more integrity, more intelligence, more perception; ask yourself that as you go along. In other words, are you folks so limited in these gifts that you got to have someone from New York come down here and tell you what's good for you?" Secretary's Exhibit H. at 4.

discourage covert persuader activities. Accordingly, the plaintiff argues that because its relationship to Southern Silk Mills was announced to employees before the plaintiff's presentation, its activities were not covert and thus § 203(b) does not apply. Second, the plaintiff contends that if § 203(b) does apply to its activities, then application of that statute violates the plaintiff's First Amendment rights of speech, association and privacy. The plaintiff, alternatively, maintains that if the Court finds that § 203(b) may constitutionally be applied to the plaintiff, § 204, 29 U.S.C. § 434, exempts it from supplying any information which it obtained in the course of its legitimate attorney-client relationship with Southern Silk Mills.

As expected, the Secretary disagrees with the plaintiff's argument and has brought a counterclaim seeking to compel the plaintiff to comply with the disclosure and reporting requirements of § 203(b). Finding support for his position in the Fourth Circuit's decision in *Douglas v. Wirtz,* 353 F.2d 30 (4th Cir.1965), *cert. denied,* 383 U.S. 909, 86 S.Ct. 893, 15 L.Ed.2d 665 (1966), and the Fifth Circuit's decision in *Wirtz v. Fowler,* 372 F.2d 315 (5th Cir.1966), *overruled in part on other grounds, Price v. Wirtz,* 412 F.2d 647 (5th Cir.1969), the Secretary argues that not only is the plaintiff subject to the requirements of § 203(b), but that it does not violate the First Amendment to subject the plaintiff to this section. Moreover, the Secretary maintains that § 204 does not prevent the plaintiff from complying with § 203(b).

## II.

The legislative history surrounding the LMRDA has been comprehensively reviewed by several courts. *See, e.g., Donovan v. Master Printers Association,* 532 F.Supp. 1140 (N.D.Ill.1981), *aff'd,* 699 F.2d 370 (7th Cir.1983); *Douglas v. Wirtz; Wirtz v. Fowler,* overruled in part by *Price v. Wirtz.* These courts have found and this Court agrees that the LMRDA was the result of extensive McClellan Committee hearings concerned with "management-

hired labor spies and undisclosed middlemen who engaged in espionage and deceptive persuasion." *Wirtz v. Fowler,* 372 F.2d at 324. *Donovan,* 532 F.Supp. at 1141–42. The focus of the LMRDA was on the influence of middlemen, hired by management, who interfered with the exercise by employees of their rights to form and join unions, provided under § 7 of the National Labor Relations Act (NLRA), 29 U.S.C. § 157. Congress was of one mind in enacting the LMRDA, as demonstrated in the House and Senate reports accompanying the Act. The House report explained:

> The hearings of the McClellan committee have also disclosed evidence that some sections of management have refused to recognize that employees have a right to form and join unions without interference and to enjoy freely the right to bargain collectively with their employer concerning their wages, hours, and other conditions of employment. The hearings of the McClellan committee have shown that some employers have cooperated with crooks and racketeers in the labor movement at the expense of their own employees and contrary to the public interest. Some employers have employed so-called middlemen to organize "no-union committees" and engage in other activities to prevent union organization among their employees. It is essential that any legislation which purports to drive corruption and improper activities out of labor-management relations contain provisions dealing effectively with these problems.

H.Rep. 741, 86th Cong., 1st Sess., *reprinted in* [1959] U.S.Code & Admin.News 2318, 2424, 2429 (1959). Using almost identical language the Senate Report explained:

> It is also plain that there are important sections of management that refused to recognize that the employees have a right to form and join unions without interference and to enjoy freely the right to bargain collectively with their employer concerning their wages, working conditions, and other conditions of employment. The hearings of the McClellan committee have shown that employers

have often cooperated with and even aided crooks and racketeers in the labor movement at the expense of their own employees. They have employed so-called middlemen to organize "no-union committees" and engage in other activities to prevent union organization among their employees. They have financed community campaigns to defeat union organization. They have employed investigators and informers to report on the organizing activities of employees and unions. It is essential that any legislation which purports to drive corruption and improper activities out of labor-management relations contain provisions dealing effectively with these problems.

S.Rep. 187, 86th Cong., 1st Sess., *reprinted in* [1959] U.S.Code & Admin.News 2318, 2322–23 (1959).

Because of the negative and corruptive effect of outside labor consultants and middlemen on the exercise of employee rights, Congress viewed with disfavor the practices of middlemen. Again, the Senate Report noted the covert activities of these labor consultants and thought that public disclosure was the touchstone necessary to eliminate their undesirable effects.

The committee notes that in almost every instance of corruption in the labor-management field there have been direct or indirect management involvements. The report of the McClellan committee describes management middlemen flitting about the country on behalf of employers to defeat attempts at labor organization. In some cases they work directly on employees or through committees to discourage legitimate organizational drives or set up company-dominated unions. These middlemen have been known to negotiate sweetheart contracts. They have been involved in bribery and corruption as well as unfair labor practices. The middlemen have acted, in fact if not in law, as agents of management. Nevertheless, an attorney for the National Labor Relations Board has testified before the McClellan committee that the present law is not adequate to deal with such activities.

The committee believes that employers should be required to report their arrangements with these union-busting middlemen. Further, the Committee on Labor and Public Welfare has received evidence in prior hearings showing that large sums of money are spent in organized campaigns on behalf of some employers for the purpose of interfering with the right of employees to join or not to join a labor organization of their choice, a right guaranteed by the National Labor Relations Act. Sometimes these expenditures are hidden behind committees or fronts; however the expenditures are made, they are usually surreptitious because of the unethical content of the message itself. The committee believes that this type of activity by or on behalf of employers is reprehensible. The expenditures may or may not be technically permissible under the National Labor Relations or Railway Labor Acts, or they may fall in a grey area. In any event, where they are engaged in they should be exposed to public view, for if the public has an interest in preserving the rights of employees then it has a concommitant obligation to insure the free exercise of them.

S.Rep., *supra* at 2326–27. With the problem clearly identified Congress took action enacting as part of the LMRDA disclosure and reporting provisions.

In Title II of the LMRDA Congress used "comprehensive, sweeping and plain" language to attack the problem of labor middlemen, *Price v. Wirtz,* 412 F.2d at 649, requiring public disclosure of improper management/middlemen relationships, § 203, 29 U.S.C. § 433, and criminal sanctions for improper payments by middlemen to employees, § 505, 29 U.S.C. § 186. Congress decided that a person engaged in labor persuasion activities should be required to file public reports. Thus, § 203(b) provides that:

(b) Every person who pursuant to any agreement or arrangement with an employer undertakes activities where an object thereof is, directly or indirectly—

(1) to persuade employees to exercise or not to exercise, or persuade employees as to the manner of exercising, the right to organize and bargain collectively through representatives of their own choosing; or

(2) to supply an employer with information concerning the activities of employees or a labor organization in connection with a labor dispute involving such employer, except information for the use solely in conjunction with an administrative or arbitral proceeding or a criminal or civil judicial proceeding;

shall file within thirty days after entering into such agreement or arrangement a report with the Secretary, signed by its president and treasurer or corresponding principal officers, containing the name under which such person is engaged in doing business and the address of its principal office, and a detailed statement of the terms and conditions of such agreement or arrangement. Every such person shall file annually, with respect to each fiscal year during which payments were made as a result of such an agreement or arrangement, a report with the Secretary, signed by its president and treasurer or corresponding principal officers, containing a statement (A) of its receipts of any kind from employers on account of labor relations advice or services, designating the sources thereof, and (B) of its disbursements of any kind, in connection with such services and the purposes thereof. In each such case such information shall be set forth in such categories as the Secretary may prescribe.

(c) Nothing in this section shall be construed to require any employer or other person to file a report covering the services of such person by reason of his giving or agreeing to give advice to such employer or representing or agreeing to represent such employer before any court, administrative agency, or tribunal of arbitration or engaging or agreeing to engage in collective bargaining on behalf of such employer with respect to wages, hours, or other terms or conditions of employment or the negotiation of an agreement or any question arising thereunder.

Congress requires two reporting and disclosure requirements through § 203(b) when a person wanders into the Congressionally determined suspect field of labor persuader activities. The rationale supporting these reporting and disclosure requirements is that disclosure of labor persuader activities will discourage and deter improper persuader activities. Smith, "The Labor-Management Reporting and Disclosure Act of 1959", 46 *Va.L.Rev.* 195, 211 (1960); Aaron, "The Labor-Management Reporting and Disclosure Act of 1959", 73 *Harv.L.Rev.* 851, 877 (1969).

The first report is the 30-day report that must be filed within 30 days after entering into an agreement or arrangement the object of which is to persuade the employees in the exercise of their rights or to supply an employer with information on an employee or a labor organization's activities involving a labor dispute. The section specifically requires that the 30-day report be signed by the president and treasurer or the corresponding principal officers and the 30-day report must contain the name and address of the person performing the labor persuader activities. Moreover, the 30-day report must contain a "detailed statement of the terms and conditions of the agreement or understanding" pursuant to which the labor persuader activities occurred. *See* Senate Committee Analysis of LMRDA at 7, *reprinted in* NLRB, *Legislative History of the Labor-Management Reporting and Disclosure Act of 1959,* at 953 (1959) [hereinafter cited as Leg.Hist. (NLRB) ]. Pursuant to § 208, 29 U.S.C. § 438, the Secretary of Labor has authorized the use of the form LM–20 for the 30-day report. 29 C.F.R. § 406.2(a).

The second report required by § 203(b), 29 U.S.C. § 433(b), is the annual report, which like the 30-day report must be filed when a person enters an agreement or arrangement to engage in labor persuader activities. Unlike the 30-day report, however, the annual report is more comprehen-

sive, it requires disclosure of specific financial data when payments are made pursuant to a labor persuader agreement or understanding. The annual report must reveal (a) receipts of any kind from employers on account of labor relations advice or services, designation of the source of the receipts and (b) disbursements of any kind from employers due to labor advice or services and the purpose of disbursements. Senate Committee Analysis, *supra.* As with the 30-day report, the Secretary of Labor has authorized the use of the form LM–21 for the annual report. 29 C.F.R. § 406.3(a).

### A.

Before addressing the plaintiff's primary argument on the constitutionality of the statute, this Court must first consider the plaintiff's statutory challenge, *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J.), and in doing so the disclosure requirements of § 203(b) and (c) are determined. In this regard, the plaintiff recognizes that the object of § 203(b) is labor persuader activities. Moreover, because the plaintiff has stipulated that its activities involving Southern Silk Mills employees were persuader activities, it has brought itself within the literal language of § 203(b)(1). Stipulation, Government's Exhibit B. Nevertheless, the plaintiff maintains that it is not subject to that section because the main concern of Congress was with middlemen who covertly act on behalf of an employer to mobilize anti-union support, not with middlemen, such as Mr. Moseley, whose identity is revealed to employees. The plaintiff further maintains that the legislative history is silent about the situation presented in this case: a speech to employees where the speaker is introduced as an attorney for the employer. In sum, the plaintiff argues that § 203(b) does not apply to it because Mr. Moseley was identified to the employees when he made his speech. Plaintiff's Brief In Support of its Motion for Summary Judgment and In Opposition to Defendant's Motion for Summary Judgment at 7 and 29–30.

This same argument was addressed by the Fifth Circuit in *Wirtz v. Fowler,* 372 F.2d 315 (5th Cir.1966), which also involved the disclosure obligation of attorneys under the LMRDA. The *Wirtz* Court, of course, recognized that the primary aim of Congress in the LMRDA was management-hired spies and undisclosed middlemen engaging in espionage and deceptive persuasion, but that Court also found, based on the unsuccessful legislation preceding the LMRDA and the finished legislative product, that the goal of Congress was disclosure, not elimination, of these labor persuader activities. *Wirtz,* 372 F.2d at 324. The Court explained:

> The aim was disclosure, but the method almost uniformly adopted to attain the end was reporting of these details, *not the mere verbal acknowledgment by the consultant that he was hired by management as a persuader,* a fact few employees would be too insensitive to grasp in its absence.

*Id.* at 325 (emphasis added). This Court finds the reasoning of the *Wirtz* Court sound and supported by the plain language of § 203(b). Thus, the Court concludes that identification of Mr. Moseley to the Southern Silk Mills employees was irrelevant for purposes of § 203(b) and does not relieve the plaintiff from complying with the statute's disclosure and reporting requirements.

### B.

The plaintiff's statutory challenge raises the question not only whether it is subject to the LMRDA, but also, if subject to the Act, whether it may exclude certain categories of information pursuant to § 204, 29 U.S.C. § 434, from the annual report. The plaintiff specifically argues that § 204, exempting certain communications obtained in the course of a legitimate attorney-client relationship, does not require it to disclose information concerning clients for whom it performed no persuader activities. Instead, the plaintiff contends that at most § 204 requires disclosure concerning the particular client that was involved in the labor

persuader activities at issue. Finally, the plaintiff argues that the annual report should be limited to the clients served by Mr. Moseley and Mr. Hutcheson and not the other firm members. In addressing these arguments with respect to § 204, it is necessary to understand the scope of § 203's disclosure requirements.

A simple reading of the plain language of § 203(b) and (c) reveals that an exception to the reporting and disclosure requirements in § 203(b) is provided in § 203(c); there is, however, a seeming inconsistency within the language of § 203(b) and (c). Independently, § 203(b) requires *any person* who engages in persuader activities pursuant to an agreement or arrangement with an employer to file a 30-day report and an annual report. Without question the plain language of § 203(b) includes lawyers. In the annual report, the labor persuader must reveal not only financial details concerning the employer for whom labor persuader activities were performed, but also *all* receipts and disbursements *of any kind* due to labor advice and services rendered to *any* employer. Despite the all-encompassing language of § 203(b), it is clear that § 203(c) exempts from any reporting and disclosure requirements a person who merely gives advice or represents an employer in any arbitration, administrative or judicial proceeding. Thus, advice to and representation of an employer by a person for purposes of an arbitration, administrative or judicial proceeding is distinguishable from other kinds of labor activities. Smith, *supra,* 46 *Va.L. Rev.* at 219.

Recognizing the inconsistent language in § 203(b), requiring disclosure of advice given due to labor persuader activity, and § 203(c), exempting advice given "by reason of" representation of an employer in an arbitration, administrative, or judicial proceeding, the Fourth Circuit adopted what it termed a "reasonable reconciliation of the conflict" in *Douglas v. Wirtz,* a case involving an attorney's obligation to file an annual report. The *Douglas* Court held that § 203 requires that once a labor consultant engages in any labor persuader activity, the duty arises to report all advice given to any employer. *Douglas,* 353 F.2d at 32. The Fourth Circuit's view has been followed by the Fifth Circuit *en banc* decision in *Price v. Wirtz,* 412 F.2d at 649, also addressing the issue of an attorney's reporting obligation under the LMRDA, and a district court in the Seventh Circuit, *Donovan v. Master Printers Association,* 532 F.Supp. 1140, 1144–47 (N.D.Ill.1981), *aff'd,* 669 F.2d 370 (7th Cir.1983). The Fourth Circuit held that it was reasonable to

> compel the reporting of all income and expenditures in connection with labor relations advice and services, given or rendered aside from the persuasion activities, if the attorney has within the same reporting period also either acted or received payment as a persuader under § (b)(1).

*Douglas* at 353 F.2d at 32. Thus, the Fourth Circuit concluded that if an attorney engages in a single instance of labor persuader activity, then he must report and disclose all labor relations advice given to any employer. While adopting the Fourth Circuit's view, the Fifth Circuit in *Price* expanded on the rationale supporting the position that disclosure of all labor relations clients is the price the attorney-persuader must pay if he engages in labor persuader activities. The *Price* Court explained:

> The legislative judgment that one who engages in the persuader business must be subjected to the pressure of revealing publicity is amply justified by the difficulty in distinguishing between those activities that are persuader activities and those that are not, and by the opportunity for misleading concealment of the true nature of such Attorney's work in situations involving intricate corporate conglomerate associates or, equally pressing, industry-wide labor controversies. Behind this judgment, of course, was the congressional conviction that quite without regard to the motives or methods of particular individuals engaging in it, the persuader business was detrimental to good labor relations and the continued public interest. Since a principal object of LMRDA was neutralizing the evils of

persuaders, it was quite legitimate and consistent with the Act's main sanction of goldfish-bowl publicity to turn the spotlight on the lawyer who wanted not only to serve clients in labor relations matters encompassed within § 203(c) but who wanted also to wander into the legislatively suspect field of a persuader.

*Price,* 412 F.2d at 650. (Footnotes omitted). This interpretation of § 203 does not render § 203(c)'s exemptions meaningless. To the contrary, as explained by the Court in *Donovan,* § 203(c) is a gloss on the potentially confusing language of § 203(b). Thus § 203(c) operates to clarify the seeming inconsistent language in § 203(b) and (c). *Donovan,* 532 F.Supp. at 1145.

■ The Fourth Circuit further found that its interpretation of § 203(b) and (c) was consistent with the legislative history, which has significant application to the present case. Quoting from the Senate Report, the Fourth Circuit in *Douglas* wrote as follows, concerning § 203(b), that it

"requires a labor-relations consultant to file a financial report upon his labor-relations activities if he undertakes to influence or affect employees in the exercise of the rights guaranteed by the National Labor Relations Act or to provide an employer with paid informers or any agency engaged in the business of violating such rights. Since attorneys at law and other responsible labor-relations advisors do not themselves engage in influencing or affecting employees in the exercise of their rights under the National Labor Relations Act, an attorney or other consultant *who confined himself* to giving advice, taking part in collectively bargaining and appearing in court and administrative proceedings nor [sic] would such a consultant be required to report. Although this would be the meaning of the language of sections 103(a) and (b) in any event, a proviso to section 103(b) guards against misconstruction." Sen.Rept. No. 1684, 85th Cong., 2d Sess., 8–9 (1958). (Accent added.)

\* \* \* \* \* \*

" \* \* \* An attorney or consultant who *confines himself* to giving legal advice, taking part in collective bargaining and appearing in court or administrative proceedings would not be included among those required to file reports under this subsection [§ (b)]. Specific exemption for persons giving this type of advice is contained in subsection (c) of section 103.-" Sen.Rept. No. 187, 86th Cong., 1st Sess., 12 (1959), U.S.Code Congressional and Administrative News 1959, p. 2328. (Accent added.)

*Douglas,* 353 F.2d at 33 (emphasis in original). *See also Price,* 412 F.2d at 650 n. 15. As simply stated by the Fifth Circuit in *Price,* "As long as the attorney limits himself to activities set forth in § 203(c), he need not report. . . . What sets the reporting [obligation] in motion is performing persuader activities. Once that duty arises, § 203(c) does not insulate from reporting the matters in § 203(b) for non-persuader clients." *Price,* 412 F.2d at 651. In the present case, § 203(b) requires the plaintiff to not only file the 30-day report but to also file the annual report because of its labor persuader activities for Southern Silk Mills. The Plaintiff, however, maintains that § 204, 29 U.S.C. § 434, exempts it from § 203(b)'s disclosure and reporting requirements. Although *Price, Wirtz* and *Douglas* did not rely on § 204 in reaching their conclusions, their analysis involving § 203 and dicta in *Wirtz* and *Douglas* concerning § 204 is relevant to this Court's analysis of the scope of § 204 relied on by the plaintiff in this case to exempt it from § 203(b)'s requirements. *See Douglas,* 353 F.2d at 33 (holding that the plaintiff does not invoke § 204 to uphold his primary contention); *Wirtz,* 372 F.2d at 332 (finding it unnecessary to determine the precise reach of § 204).

When § 204 came before the Senate as an amendment to the pending LMRDA legislation, Senator John F. Kennedy described it as "the amendment which takes care of the lawyers". Department of Labor, *Legislative History of Labor Management Relations and Disclosure Act of 1959* at 535

(1964) [hereinafter cited as Leg.Hist. (Labor)]. The section provides as follows:

Nothing contained in this chapter shall be construed to require an attorney who is a member in good standing of the bar of any State, to include in any report required to be filed pursuant to the provisions of this chapter any information which was lawfully communicated to such attorney by any of his clients in the course of a legitimate attorney-client relationship.

Understandably relying on the plain language of § 204, the plaintiff emphasizes that because § 204 covers "any information" communicated in the course of a legitimate attorney-client relationship and gives the attorney and not the client the privilege to withhold information, § 204 is broader than the traditional common law attorney-client privilege. The plaintiff draws additional support from the legislative history. Plaintiff's Brief In Support of Its Motion for Summary Judgment In Opposition to Defendant's Motion For Summary Judgment at 30–34.

The legislative journey of § 204, through the Senate and House, indicates that it was the creation of Senator Goldwater and was reluctantly accepted by the Senate sponsors. When Senate Bill 1555,[4] which would later become the LMRDA, was introduced by Senator Kennedy and referred to the Senate Committee on Labor and Public Welfare on March 25, 1959, it contained no special attorney-client exemption. Nor was an attorney-client exemption included in S. 1555 when it was favorably reported out of Committee on April 14, 1959. Leg.Hist. (NLRB) at 338–396. The absence of an attorney-client exemption was not due to any failure to identify the problem of protecting communications between labor attorneys and their clients. To the contrary, according to Senator Goldwater, the Committee was indeed apprised of the potential problem that arose because the broadly defined term of "labor relations consultant" clearly included independent contractors such as attorneys.[5] Recognizing attorneys' consultative and advisory roles with management, Senator Goldwater expressed doubt as to whether communications between attorneys and their clients were protected under S. 1555. S.Rep. 187 at 82, Leg.Hist. (NLRB) at 478. Senator Goldwater was supported in his view by the American Bar Association (ABA) which adopted a resolution at its mid-winter meeting. The ABA House of Delegates resolution provided that:

Resolved, That the American Bar Association urges that in any proposed legisla-

4. The attorney-client exemption was better received in the House than in the Senate. The exemption considered by the House, however, was considerably different from that in the Senate. On July 23, 1959, the House Committee on Education and Labor favorably reported H.R. 8342 to the full House. That House legislation contained the following exemption for attorney-client communications.

ATTORNEY–CLIENT COMMUNICATIONS EXEMPTED

SEC. 204. Nothing contained in this Act shall be construed to require an attorney who is a member in good standing of the bar in any State, or any client of such an attorney, to include in any report required to be filed pursuant to the provisions of this Act any information which is confidential between the attorney and such client in the course of a legitimate attorney-client relationship, including but not limited to the existence of the relationship of attorney and client, the financial details thereof, or any information obtained, advice given, or activities carried on by the attorney within the scope of the legitimate practice of law.

H.R. 8342 at 27, Leg.Hist. (NLRB) at 713. (as reported). The express purpose of this section was explained in House Rep. No. 741, which accompanied H.R. 8342. That report stated in reference to § 204 in H.R. 8342 that "[t]he purpose of this section is to protect the traditional confidential relationship between attorney and client from any infringement or encroachment under the reporting provisions of the committee bill." H.Rep. No. 741 at 37, Leg.Hist. (NLRB) at 795, U.S.Code Cong. & Admin.News, p. 2459. This provision, however, was not acceptable to the Conference Committee, which adopted the Senate's exemption of attorney-client communications.

5. LMRDA defines "labor relations consultant" as "any person who, for compensation, advises or represents an employer, employer organization, or labor organization concerning employee organizing, concerted activities, or collective bargaining activities." § 3(m), 29 U.S.C. § 402(m).

tion in the labor-management field, the traditional confidential relationship between attorney and client be preserved, and that no such legislation should require report or disclosure, by either attorney or client, of any matter which has traditionally been considered as confidential between a client and his attorney, including but not limited to the existence of the relationship of attorney and client, the financial details thereof, and any advice or activities of the attorney on behalf of his client which fall within the scope of the legitimate practice of law; be it further

*Resolved,* That the officers and councils of the sections of labor relations law and corporation, banking and business law be directed to bring the foregoing resolution to the attention of the members and proper committees of Congress in connection with any proposed legislation in this field and to oppose legislation contrary to the principles urged in said resolution.

S.Rep. 187, *supra,* U.S.Code Cong. & Admin. News, p. 2386. The Committee, however, rejected Senator Goldwater's amendments reasoning that S. 1555 already protected attorney-client communication under existing law. S.Rep. 187, *supra* at 102–103, Leg. Hist. (NLRB) at 498–99; Leg.Hist. (Labor) at 519. Thus, S. 1555 was reported out of Committee without an attorney-client exemption.

On the floor of the Senate, however, Senator Goldwater continued his efforts to protect attorney-client confidential communications offering an amendment to S. 1555, which now constitutes § 204. Leg.Hist. (Labor) at 624 (citing Cong.Rec. 19759–62, Senate, Oct. 2, 1959). This time Senator Goldwater was successful because Senator Kennedy accepted Senator Goldwater's amendment. The discussion preceding Senator Kennedy's acceptance of the amendment is crucial to understanding the legislative purpose of the attorney-client exemption in § 204. The relevant parts of the colloquy between Senators Kennedy, Goldwater and Dirksen relative to § 204 were as follows:

**Mr. Goldwater.** As a layman, I believe there should be a perpetuation of the sanctity of relations between attorney and client. I know that if I were involved in a situation in which an attorney was representing me, and a report had to be made, I would not want all of the intimate details of communications between the attorney and me to become public property.

\* \* \* \* \* \*

**Mr. Dirksen.** Unless I have been laboring under a delusion for the last 20 years as a member of the bar, it is my understanding that the safeguard of the lawyer-client relationship was designed not to safeguard or protect the lawyer, but the client.

**Mr. Kennedy.** If the Senator from Illinois had sat on the McClellan committee, he would understand that the practice works both ways.

**Mr. Dirksen.** But that was not the reason it was designed in the first instance, when it was written into the law. The idea was that when a client came into a lawyer's office and laid out his confessional story, a confidential relationship was created, and the lawyer could not be brought into court to testify to the conversations between his client and himself. The law was not designed to defend the lawyer; it was designed to safeguard the American citizen who hired the lawyer.

**Mr. Kennedy.** There is no doubt in my mind that the bill which was originally drafted by lawyers adequately protected them. Therefore, I do not feel that the amendment offered by the Senator from Arizona is wholly necessary. But in order that there may be no question about it, I will accept the amendment.

\* \* \* \* \* \*

**Mr. Dirksen.** That may very well be; but I think it is important to anchor the fundamental reason or purpose for protecting this relationship. It has existed since time immemorial. It was designed to protect the client against harassment in case somebody tried to compel him, by process or otherwise, to disclose conversa-

tions, confessions, and statements which might have been interchanged between lawyer and client.

**Mr. Kennedy.** Mr. President, I am delighted to accept the amendment. . . .

Leg.Hist. (Labor) at 535–36. (Cong.Rec. 6558, Senate, April 23, 1959). In the House, H.R. 8342, which contained a different attorney-client exemption, was favorably reported out of Committee on July 30, 1959, and the full House, on August 11, 1959 passed H.R. 8342 after eliminating by amendment the different provisions in S. 1555. Leg.Hist. (NLRB) at 1548–53.[6] In conference, however, the Senate's version of the attorney-client exemption was adopted and now exists in § 204. Conf.R. No. 1147 at 33, Leg.Hist. (NLRB) at 937. The Conference Committee, however, did not provide any clear guidance as to the meaning or purpose of § 204, stating simply that:

> The Senate bill provides that an attorney need not include in any report required by the Act any information which was lawfully communicated to such attorney by any of his clients in the course of a legitimate attorney-client relationship.
>
> The conference substitute adopts the provisions of the Senate bill, but in connection therewith the conferees included, in section 203(c), a provision taken from the Senate bill that provides that an employer or other person is not required to file a report covering the services of such person by reason of his giving or agreeing to give advice to such employer or representing or agreeing to represent such employer before any court, administrative agency, or tribunal of arbitration or engaging or agreeing to engage in collective bargaining on behalf of such employer or the negotiation of an agreement or any question arising thereunder.

Leg.Hist. (NLRB) at 937. Although it is not definitive, the Court notes that the Conferees' reference to the exemption of advice given in connection with administrative, judicial and arbitration proceedings pursuant to § 203(c) suggests that the § 204 exemption is similar.

Based on this review of the legislative history and particularly the discussion between Senators Kennedy, Dirksen and Goldwater, this Court rejects the plaintiff's contention that § 204 is broader than the traditional common law attorney-client privilege. Admittedly, § 204 is not a mirror image of the common law privilege. When the legislative debate is considered as well as the operation of § 203 within the total statutory scheme, however, this Court agrees with the Court in *Wirtz v. Fowler* that § 204 "roughly parallel[s] the common-law attorney-client privilege." *Wirtz,* 372 F.2d at 332. This conclusion is supported if not mandated by the legislative history. First, Senator Kennedy clearly stated that § 204 was not needed because the lawyers were already protected under the legislation, but supported inclusion of § 204 so that there would be "no question about it." Thus, it appears that § 204 merely reinforces the attorney-client exceptions existing in §§ 203(a)(3) and (4), (b) and (c), 29 U.S.C. § 433. Second, the legislative history indicates that although § 204 is broadly phrased the intent of Congress was to anchor the section in the traditional common-law attorney-client privilege. In direct response to Senator Kennedy's statement that he believed lawyers were already protected in the legislation without § 204, Senator Dirksen emphasized that the fundamental purpose for the section was to protect the client against compelled disclosure of conversations, confessions and statements between lawyer and client. This purpose indicates a clear reference to those confidential communications between a lawyer and client which are protected through the traditional common-law attorney-client privilege. Third, a broad interpretation of § 204 as advanced by the plaintiff would engulf the reporting and disclosure requirements of the LMRDA as it applies to lawyers. In this case the Court's acceptance of

---

**6.** Senate Bill 1555 incorporated 46 amendments of the Committee on Labor and Public Welfare to Senate Bill 505, which was introduced on January 20, 1959, but 505 did not contain an attorney-client exemption. Leg.Hist. (NLRB) at 2–79.

the plaintiffs' theory of the scope of § 204 would allow it to engage in labor persuader activities without complying with the disclosure and reporting requirements mandated by Congress, simply because the plaintiffs are lawyers. In fact, the plaintiff's argument for an exemption broader than the common-law attorney-client relationship under § 204 would effectively repeal the LMRDA as to lawyers and their clients. Such an implied repeal of the LMRDA as applied to lawyers and their clients would diametrically oppose the clear and unambiguous words of § 203(b) and the legislative history that includes lawyers and their clients within the provisions of the LMRDA. *See Wirtz,* 372 F.2d at 328 (relying on 105 Cong.Rec. 6555–56; Leg.Hist. (NLRB) at 1161; Leg.Hist. (Labor) at 221–22).

Moreover, not only does the legislative history mandate interpretation of § 204 as roughly equal to the common-law privilege, but this conclusion is also reached by reconciling the operation of § 203 and § 204. As recognized by the Court in *Wirtz,* § 203(a) requires the employer-client to report all persuader arrangements. 29 U.S.C. § 433(a)(4).[7] Also, as previously explained, § 203(b) requires the employee-attorney who engages in any labor persuader activities to report information for both the attorney's persuader and non-persuader clients. 29 U.S.C. § 433(b)(1). Thus, § 203, 29 U.S.C. § 433, imposes reciprocal reporting and disclosure obligations on the em-

ployer/client and the employee/attorney to report its persuader activities. However, both sections allow the parties to maintain confidentiality for that information used solely in an administrative, arbitral or judicial proceedings. § 203(a)(3) and (4), (b) and (c), 29 U.S.C. § 433(a), (b) and (c). As pointed out by the Court in *Wirtz,* it would be meaningless for Congress to bar disclosure of information by an employee/attorney if the employer/client is required to reveal the information under § 203(a). *Wirtz,* 372 F.2d at 333. Consequently, the purpose of § 204 is to protect from disclosure information that the employer is not required to disclose pursuant to § 203(a). *Id.* Given the operation of § 203, it appears that § 204 should be construed consistent with the traditional common law attorney-client privilege. Any other interpretation would create an exemption broader than the common law privilege and would effectively repeal the requirements of § 203 and thereby negate the reporting and disclosure requirements of the LMRDA as applied to lawyers.

### C.

■ Because this Court has determined that § 204 is parallel to the traditional common law attorney-client privilege, the Court must refer to the attorney-client privilege as it exists in Tennessee, Fed.R.Evid. 501. Codification of the common law attorney-client privilege in Tennessee exists in Tenn. Code Ann. § 23–3–105, which provides that:

7. The relevant section is § 203(a)(4) and (5), 29 U.S.C. § 433(a)(4) and (5), which provide as follows:
 (a) Every employer who in any fiscal year made—
 (4) any agreement or arrangement with a labor relations consultant or other independent contractor or organization pursuant to which such person undertakes activities where an object thereof, directly or indirectly, is to persuade employees to exercise or not to exercise, or persuade employees as to the manner of exercising, the right to organize and bargain collectively through representatives of their own choosing, or undertakes to supply such employer with information concerning the activities of employees or a labor organization in connection with a labor dispute involving such employer, ex-

cept information for use solely in conjunction with an administrative or arbitral proceeding or a criminal or civil judicial proceeding; or
 (5) any payment (including reimbursed expenses) pursuant to an agreement or arrangement described in subdivision (4);
shall file with the Secretary a report, in a form prescribed by him, signed by its president and treasurer or corresponding principal officers showing in detail the date and amount of each such payment, loan, promise, agreement, or arrangement and the name, address, and position, if any, in any firm or labor organization of the person to whom it was made and a full explanation of the circumstances of all such payments, including the terms of any agreement or understanding pursuant to which they were made.

No attorney, solicitor or counselor shall be permitted, in giving testimony against a client, or person who consulted him professionally, to disclose any communication made to him as such by such person, during the pendency of the suit, before or afterwards, to his injury.

The statute is declaratory of the traditional attorney-client privilege that applies only if

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

See *United States v. United Shoe Machinery Corporation,* 89 F.Supp. 357, 358–59 (D.Mass.1950) (classic case on the attorney-client privilege). *See also United States v. Goldfarb,* 328 F.2d 280, 281 (6th Cir.1964) (Sixth Circuit applies the same test).

However, the privilege does not exclude all communications between an attorney and his client. *Galland-Henning Mfg. Co. v. Dempster Brothers, Inc.,* 315 F.Supp. 68, 86 (E.D.Tenn.1970). The Tennessee Supreme Court recognized in *Johnson v. Patterson,* 81 Tenn. 626, 13 Lea. 626 (1884), in reference to the Tennessee statute, that the privilege:

excludes all communications, and all facts that come to the attorney in the confidence of the relationship. But there are many transactions between attorney and client, that have no element of confidence in them, of which he is competent to testify. For instance, he may prove his client's handwriting; may prove what

money was collected by him, when paid over, and to whom paid.

*Id.* at 649. *See also Hazlett v. Bryant,* 192 Tenn. 251, 241 S.W.2d 121, 124 (1951); *Lang v. Ingalls Zinc Co.,* 49 S.W. 288, 295 (Tenn. Ch.App.1898). The interpretation of the attorney-client privilege in Tennessee cases appears to be consistent with the Sixth Circuit's observations in *Goldfarb* recognizing that the "privilege does not envelop everything arising from the existence of an attorney-client relationship;" to the contrary, the attorney-client privilege is an obstacle to the investigation of the truth and should be narrowly confined. *Goldfarb,* 328 F.2d at 282. *Accord United States v. Bartone,* 400 F.2d 459, 461 (6th Cir.1968). Thus, absent special circumstances, the attorney-client privilege does not prohibit disclosure of the fact or the existence of an attorney-client relationship or the dates that services were rendered. *Condon v. Petacque,* 90 F.R.D. 53 (N.D.Ill.1981). Nor does the privilege, absent special circumstances, foreclose disclosure of the amount of money paid by a client for services. *United States v. Haddad,* 527 F.2d 537, 538–39 (6th Cir.1975); *cert. denied,* 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 797 (1976).

In the present case, it is the considered judgment of this Court that the attorney-client privilege does not bar disclosure and reporting of any of the information required in either the 30-day report or the annual report under § 203(b), 29 U.S.C. § 433(b). Initially, the Court notes that the plaintiff in this case was not acting as a lawyer when he engaged in labor persuader activities but as a labor consultant;[8] thus imposition of the attorney-client privilege would be inappropriate. Moreover, the purpose of the communications between the plaintiffs and Southern Silk Mills was in reference to unionization at Southern Silk Mills and not in relation to a legal opinion, services or proceeding to trigger the privilege. At a minimum, the reports under § 203(b) require disclosure of the name of the client for whom labor persuader activi-

---

**8.** As pointed out by the Court in *Douglas v. Wirtz,* 353 F.2d at 33, the practices described in

§ 203(b) are those of labor consultants whose "work is not necessarily a lawyer's".

ties were performed, the terms of the arrangement or agreement pursuant to which the persuader activities occurred and the fees on account of labor advice or services. *Wirtz v. Fowler,* 372 F.2d at 332. Generally, this information is not covered by the attorney-client privilege.

 The plaintiffs' involvement with Southern Silk Mills is illustrative. First, the name of the client in this case was revealed by the client when the vice-president and general manager of Southern Silk Mills, William Hilleary, Jr., announced to employees that Mr. Ray Moseley was an attorney with the law firm representing the company. *See* Plaintiff's Response to Request to Admit No. 8. Thus, even assuming that a client's name was covered under the attorney-client privilege, it appears that the plaintiff's client has waived any objections to revealing its name. Second, disclosure of the terms and conditions of the arrangement or agreement for the labor persuader services presents more of a problem. Clearly, the terms of an agreement or arrangement might be considered privileged communications. Nevertheless, in the present case as in *Wirtz,* the agreement between Southern Silk Mills and the plaintiff has been performed. Thus, the activities performed by Mr. Moseley are no longer privileged "communications" from Southern Silk Mills. To the contrary, the plaintiff is required to report the "general nature of what" it did, not what it was " 'told' to do" by its client. *Wirtz.* 372 F.2d at 332 n. 36. Moreover, the privilege may not apply if the terms and conditions of an agreement or arrangement between the client and his lawyer involved a criminal violation of the LMRDA. § 505, 29 U.S.C. § 186. Third, the fees paid on account of labor advice or other services are clearly exempt from the common law attorney-client privilege. *See United States v. Haddad; Johnson v. Patterson.* Thus, the attorney-client privilege under § 204 of the LMRDA does not exempt the plaintiff from complying with the reporting Act as it relates to its persuader client, Southern Silk Mills, or to its non-persuader clients.

### III.

Having found that the reporting and disclosure requirements of the LMRDA apply, and that the exemptions in the Act do not apply to the plaintiff, the Court now addresses the plaintiff's argument that the requirements of § 203 violate its rights under the First Amendment of the United States Constitution. The plaintiff concedes that the constitutionality of the LMRDA was previously upheld in *Wirtz v. Fowler,* 372 F.2d at 334–35, but insists that recent Supreme Court decisions under the First Amendment render *Wirtz* invalid. Basically, the plaintiff argues that the LMRDA violates the First Amendment because Mr. Moseley's speech to Southern Silk Mills's employees was a valid exercise of his First Amendment rights. The reporting and disclosure requirements of the Act operate, according to the plaintiff, to deter it from exercising its First Amendment rights and to exact a penalty—reporting the details of the speaker's professional relationships—if it exercises its right to free speech. Moreover, the plaintiff complains that the statute is under-inclusive because it does not require unions to make similar disclosures and that it invades the plaintiffs' right to privacy and association to disclose information concerning the plaintiff's partners, associates and secretaries. Plaintiff's Brief in Support of its Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment at 25–28. Record of Proceedings, April 27, 1981 at 41.

Before addressing the plaintiff's constitutional arguments, the Court notes that not only has the *Wirtz* court upheld the constitutionality of the LMRDA and the section at issue in the present case, but at least two other courts have upheld the Act. In *Donovan v. Master Printers Association,* 532 F.Supp. 1140, 1147 (N.D.Ill.1981), *aff'd,* 699 F.2d 370 (7th Cir.1983), the Court held that the LMRDA does not violate the First Amendment rights of labor consultants. Accordingly, *Donovan* ordered the defendant, who had engaged in labor persuader activities, to comply with the Act. Similar-

ly, in *Marshall v. Stevens People and Friends for Freedom,* 669 F.2d 171 (4th Cir.1981), *cert. denied,* 455 U.S. 940, 102 S.Ct. 1432, 71 L.Ed.2d 651 (1982), which was a proceeding brought by the Secretary of Labor to enforce administrative subpoenas, the court upheld the constitutionality of the statute when the Secretary established compelling governmental interest in disclosure. *Id.* at 176–79. In making its determination of the constitutionality of the LMRDA, this Court finds the decisions in *Wirtz, Donovan* and *Marshall* instructive.

### A.

This Court agrees with the basis of the plaintiff's constitutional argument that an employer, such as Southern Silk Mills, has the constitutional and statutory right to express its views in the labor relations field. *See* § 8(c) of the National Labor Relations Act, 29 U.S.C. § 158(c); *NLRB v. Gissel Packing Co.,* 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). The LMRDA, however, does not prohibit any employer speech; neither does the Act prohibit speech by labor relations consultants or attorneys acting as consultants. Instead, the Act requires disclosure of certain financial and non-financial information if a person engages in labor persuader activity. Thus, the issue presented is not whether the LMRDA prohibits First Amendment speech, but whether the disclosure and reporting requirements under the Act improperly infringe on First Amendment rights.

The Supreme Court has firmly established that compelled governmental disclosure may infringe upon First Amendment freedoms. *E.g., Buckley v. Valeo,* 424 U.S. 1, 64, 96 S.Ct. 612, 656, 46 L.Ed.2d 659 (1976); *Baird v. State Bar of Arizona,* 401 U.S. 1, 91 S.Ct. 702, 27 L.Ed.2d 639 (1971); *Gibson v. Florida Legislative Investigation Committee,* 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963); *Louisiana v. NAACP,* 366 U.S. 293, 81 S.Ct. 1333, 6 L.Ed.2d 301 (1961); *Shelton v. Tucker,* 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); *Bates v. Little Rock,* 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960); *NAACP v. Alabama,*

357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). The Court has consistently held, however, that compelled governmental disclosure is permissible only if the government has a compelling interest to justify the chill placed on First Amendment freedoms and the balance of factors demonstrates a strong relationship between the government's interest and the required disclosure. *Buckley v. Valeo,* 401 U.S. at 64, 96 S.Ct. at 656. *See also Federal Election Commission v. National Right to Work Committee,* — U.S. —, 103 S.Ct. 552, 559, 74 L.Ed.2d 364 (1982) (applying *Buckley* test to section of federal Act limiting corporate and union campaign expenditures); *Brown v. Socialist Workers '74 Campaign Committee,* — U.S. —, 103 S.Ct. 416, 420–21, 74 L.Ed.2d 250 (1982) (applying *Buckley* standard to Ohio campaign disclosure law); *United Steelworkers of America v. Sadlowski,* 457 U.S. 102, 102 S.Ct. 2339, 2345, 72 L.Ed.2d 707 (1982) (applying compelling governmental interest test to another section of LMRDA). In fact, any encroachment of First Amendment freedoms must be justified by a compelling governmental interest. *Brown v. Hartlage,* 456 U.S. 45, 102 S.Ct. 1523, 71 L.Ed.2d 732 (1982); *California Medical Association v. FEC,* 453 U.S. 182, 101 S.Ct. 2712, 69 L.Ed.2d 567 (1981); *Landmark Communications, Inc. v. Virginia,* 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); *United States v. Harriss,* 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954). The Supreme Court's standard to determine the validity of disclosure requirements as announced in *Buckley* remains valid.

We long have recognized that significant encroachments on First Amendment rights of the sort that compelled disclosure imposes cannot be justified by a mere showing of some legitimate governmental interest. Since *NAACP v. Alabama,* we have required that the subordinating interests of the State must survive

exacting scrutiny. We also have insisted that there be a "relevant correlation" or "substantial relation" between the governmental interest and the information required to be disclosed. *See Pollard v. Roberts,* 283 F.Supp. 248, 257 (E.D.Ark.) (three-judge court), *aff'd,* 393 U.S. 14, 89 S.Ct. 47, 21 L.Ed.2d 14 (1968) (per curiam). This type of scrutiny is necessary even if any deterrent effect on the exercise of First Amendment rights arises, not through direct government action, but indirectly as an unintended but inevitable result of the government's conduct in requiring disclosure. *NAACP v. Alabama, supra,* 357 U.S., at 461, 78 S.Ct., at 1171. *Cf. Kusper v. Pontikes,* 414 U.S. [51], at 57–58, 94 S.Ct. [303], at 307–308 [38 L.Ed.2d 260].

*Buckley,* 424 U.S. at 64–65, 96 S.Ct. at 656. (Footnotes omitted).

The Supreme Court in *United Steelworkers of America v. Sadlowski* addressed the issue of the scope of § 101(a)(2) of the LMRDA, 29 U.S.C. § 411(a)(2). Although *Sadlowski* involved the validity of a union rule under the LMRDA, there the Supreme Court explained the applicable constitutional standard. In rejecting the argument that § 101(a)(2) merely incorporated First Amendment rights, the Court noted, after reviewing the legislative history, that

> First Amendment freedoms may not be infringed absent a compelling governmental interest. Even then, any government regulation must be carefully tailored, so that rights are not needlessly impaired. *Brown v. Hartlage,* 456 U.S. 45, 53, 102 S.Ct. 1523, 1529, 71 L.Ed.2d 732 (1982). Union rules, by contrast, are valid under § 101(a)(2) so long as they are reasonable; they need not pass the stringent tests applied in the First Amendment context.

*Sadlowski,* 457 U.S. at 111, 102 S.Ct. at 2345. Thus, the compelled governmental disclosure cases from *NAACP v. Alabama* through *Buckley, Sadlowski* and *Brown* recognize that an individual's First Amendment rights to privacy, speech and association may yield to a compelling governmental interest requiring disclosure. To be

sure, the compelling governmental interest must satisfy the *Buckley* standard, namely it must (1) survive strict or exacting scrutiny and (2) bear a relevant correlation or substantial relation to the information required to be disclosed. *Buckley,* 424 U.S. at 64, 96 S.Ct. at 656. Nevertheless, in some circumstances compelled disclosure, such as that required in the LMRDA, may outweigh First Amendment interests. *See e.g., Jones v. Unknown Agents of Federal Election Commission,* 613 F.2d 864, 875 (D.C.Cir. 1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1019, 62 L.Ed.2d 755 (1980). *Accord Familias Unidas v. Briscoe,* 619 F.2d 391, 398–99 (5th Cir.1980); *Hastings v. North East Independent School District,* 615 F.2d 628, 631–32 (5th Cir.1980).

### B.

In determining the constitutionality of the reporting and disclosure requirements of the LMRDA, 29 U.S.C. § 433(b), the Court recognizes that the Act as applied to the plaintiff infringes on its First Amendment rights of speech, privacy and association. The Secretary's suggestion that the plaintiff has failed to show any actual infringement on its rights simply ignores that the 30-day and annual reports are quite comprehensive in their disclosure and reporting requirements. Defendant's Reply Memorandum at 5. Those reports require revealing not only the association or relationship between the plaintiff and its persuader employer, but also the relationship of the plaintiff to all its other non-persuader clients for whom it gave labor advice or services, even though those clients were not involved in the labor persuader activity that triggered § 203(b)'s requirements. But even more stringent is the requirement that the fees paid by both persuader and non-persuader clients be revealed for public scrutiny. This Court is of the opinion that disclosure of this kind of information is protected by the First Amendment absent a countervailing and compelling governmental interest.

In balancing the plaintiff's First Amendment concerns against the government's interest, the Court finds that the LMRDA, 29 U.S.C. § 433(b), was enacted after Congress

determined that the activity of middlemen threaten to upset employees' exercise of their rights to organize and join labor organizations and to bargain collectively. *See* S.Rep. 187, *supra;* Cong.Rec. 11374–77, 86th Cong., 1st Sess. (1959), *reprinted in* Leg. Hist. (Labor) at 561–63. Because of the importance of good labor relations to national commerce, 29 U.S.C. § 401(a), and because of the danger of middlemen, Congress enacted the LMRDA and declared:

> The Congress further finds, from recent investigations in the labor and management fields, that there have been a number of instances of breach of trust, corruption, disregard of the rights of individual employees, and other failures to observe high standards of responsibility and ethical conduct which require further and supplementary legislation that will afford necessary protection of the rights and interests of employees and the public generally as they relate to the activities of labor organizations, employers, labor relations consultants, and their officers and representatives.

Section 2(b), 29 U.S.C. § 401(b). As the Senate Committee recognized:

> All of the activities required to be reported by this section are not illegal nor are they unfair labor practices. However, since most of them are disruptive of harmonious labor relations and fall into a gray area, the committee believes that if an employer or a consultant indulges in them, they should be reported. This public disclosure will accomplish the same purpose as public disclosure of conflicts of interest and other union transactions which are required to be reported in sections 101 and 102 of this bill.

S.Rep. 187, *supra* at 2328 and Leg.Hist. (NLRB) at 408. It is apparent that Congress had a compelling governmental interest—the protection of employees in the exercise of their rights from the influence of middlemen—in mind when it enacted the disclosure and reporting requirements of the LMRDA.

■ The plaintiff's contention that the disclosure requirements of the Act discourage or deter the exercise of free speech overlooks that the Supreme Court has approved of disclosure of associational relationships. In *United States v. Harriss,* 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954), the Court addressed the constitutionality of disclosure requirements under the Federal Regulation of Lobbying Act, 60 Stat. 812, 839, 2 U.S.C. §§ 261–270. In finding no First Amendment violation, the *Harriss* Court rejected the suggestion that the Act may deter exercise of constitutional rights, stating:

> [E]ven assuming some such deterrent effect, the restraint is at most an indirect one resulting from self-censorship, comparable in many ways to the restraint resulting from criminal libel laws. The hazard of such restraint is too remote to require striking down a statute which on its face is otherwise plainly within the area of congressional power and is designed to safeguard a vital national interest.

*Id.* at 626, 74 S.Ct. at 816. (Footnote omitted). Similarly, in this case the indirect and self-imposed deterrent effect on the plaintiff from participating in labor persuader activity is insufficient to render the statute unconstitutional. *Cf. Wirtz v. Fowler,* 372 F.2d at 334 (rejecting the plaintiff's constitutional argument based on the holding in *Harriss*). The possibility that persons may choose not to engage in labor persuader activity because of § 203's requirements is too speculative to render unconstitutional the national goal reflected in the LMRDA.

■ The plaintiff's argument that the Act is under-inclusive in that there are no similar disclosure requirements for the union and its contention that the Act must fall because of its restraints upon speech must also be dismissed. First, comparable union activities are required to be reported in §§ 201, 202, 29 U.S.C. §§ 431 and 432. Second, it is well established that Congress need not address in a piece of legislation every evil identified. Thus, there is no constitutional violation merely because Congress did not legislate directly concerning union persuaders when it required disclosure of management persuaders. *See, e.g., McDonald v. Board of Election,* 394 U.S. 802, 809, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739 (1969).

Moreover, the plaintiff's reliance on cases involving general prohibitions on speech, *see, e.g., Carey v. Brown,* 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980), is misplaced. The issue presented in this case is not one of prohibiting speech by employers or their labor consultants. To the contrary, the constitutional issue in this case is whether the reporting and disclosure requirements imposed upon those who engage in labor persuader activity unlawfully infringe on their First Amendment rights.

It is the considered judgment of this Court that the infringement on the plaintiff's constitutional rights caused by the disclosure requirements of the LMRDA, 29 U.S.C. § 433(b), are outweighed by a compelling governmental interest. It cannot be overemphasized that Congress enacted LMRDA in response to improper, if not corruptive, activity by management persuaders. The Court finds persuasive the *Donovan* Court's analogy that this situation is similar to *Buckley* where Congress required campaign disclosure because of the corrupting influence of contributions upon the political process. *Donovan,* 532 F.Supp. at 1150.

> [The] justifications for the disclosure requirements in the LMRDA are remarkably similar to those of the Federal Election Commission Act discussed in *Buckley.* The disclosure permits employees in a labor setting, like voters in an election, to understand the sources of the information being distributed. *See also* §§ 201, 202, 29 U.S.C. §§ 431, 432 (requiring extensive reporting from labor organizations and their officers.). The annual report serves as a crosscheck on the accuracy of the 30 day reports and serves to notify the Secretary of relationships between a persuader and employer which may give rise to a duty to file a 30 day report. More importantly, . . . Congress viewed management persuaders as inherently suspect and their activities subject to abuse in an extremely sensitive field. Disclosure is therefore justified as a means of discouraging potential abuse where there is a demonstrated propensity for such abuse. *See United States v.*

*Harriss,* 347 U.S. 12, 74 S.Ct. 808, 98 L.Ed. 989 (1954); *Marshall v. Stevens People and Friends for Freedom,* 669 F.2d 171, 108 LRRM 2024 (4th Cir.1981). Finally, it must be remembered that the evil Congress was addressing was not "persuasion" in and of itself, but the tendency of persuaders to engage in unfair labor practices. Thus, the Act would be less than effective if it permitted the targets of the publicity to be entirely free from public scrutiny where they are able to couch their function as "advice" rather than persuasion.

*Id.* (footnotes omitted). The Nation's interest in preserving and maintaining harmonious labor relations through disclosure of labor persuader activity that might interfere with workers' rights is more than adequate justification for § 203(b). To be sure, in upholding the constitutionality of § 203(b) the Court recognizes that First Amendment rights of labor consultants are infringed. In this Court's judgment, however, such infringement is justifiable to preserve the rights of workers and to prevent unfair labor practices.

### IV.

In conclusion, Congress has identified the problem of undesirable labor persuader activities as one that threatens labor relations in this country. Congress selected disclosure of these activities as the remedy, perhaps heeding the advice of Mr. Justice Brandeis:

> Publicity is justly commended as a remedy for social and industrial diseases. Sunlight is said to be the best of disinfectants; electric light the most efficient policeman.

*Buckley,* 424 U.S. at 67, 96 S.Ct. at 658 (quoting L. Brandeis, Other People's Money 62 (1933)). In so doing, it drafted a statute that is broadly worded. This Court has analyzed the plain language of the statute against the constitutional requirements and when necessary the Court has referred to the legislative history. After consideration of the issues presented, the Court finds no First Amendment violation.

Accordingly, the motion for summary judgment of the plaintiff is denied and the

motion for summary judgment of the defendant is granted. Therefore, the plaintiff will be ORDERED to comply within 30 days with the requirements of § 203(b), 29 U.S.C. § 433(b), in an ORDER entered contemporaneously with this Memorandum.

### ORDER

Pursuant to the Memorandum of Law issued this day in the above-styled case finding that the plaintiff law firm of Humphreys, Hutcheson & Moseley is subject to the reporting and disclosure requirements in § 203(b), 29 U.S.C. § 433 of Title II of the Labor Management Reporting and Disclosure Act of 1959, because of its participation in labor persuader activities; and further finding that the plaintiff is not exempt from the requirements of § 203(b) because of § 204, 29 U.S.C. § 434; and further finding that it does not violate the First Amendment to the United States Constitution to subject the plaintiff to § 203(b), it is ORDERED that the plaintiff comply with § 203(b) by submitting completed forms LM–20 and LM–21 to the Secretary of the United States Department of Labor within thirty (30) days.