669 F.2d 171
 108 L.R.R.M. (BNA) 2024, 92 Lab.Cas. P 12,944
 Ray MARSHALL, Secretary of Labor, United States Department
of Labor, Appellant,
v.
STEVENS PEOPLE AND FRIENDS FOR FREEDOM and E. C. (Mildred)
Ramsey, Appellees.
Amalgamated Clothing and Textile Workers Union, ALF-CIO,
CLC, Amicus Curiae.
Ray MARSHALL, Secretary of Labor, United States Department
of Labor, Appellant,
v.
John G. HUTCHENS, Appellee.
Ray MARSHALL, Secretary of Labor, United States Department
of Labor, Appellant,
v.
J. P. STEVENS EMPLOYEES EDUCATION COMMITTEE, Eugene Ray
Patterson, Wilson Lambert, Robert A. Valois, and
Robert T. Click, Appellees.
 Nos. 80-1490, 80-1715 and 80-1716.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 2, 1981.
Decided Aug. 4, 1981.
 
 Marleigh Dover Lang, Atty., Civ. Div., U.S. Dept. of Justice, Washington, D.C. (Alice Daniel, Asst. Atty. Gen., Washington, D.C., Thomas E. Lydon, U.S. Atty., Columbia, S.C., and James L. Blackburn, U.S. Atty., Raleigh, N.C., William Kanter, Atty., Civ. Div., U.S. Dept. of Justice, Washington, D.C., on brief), for appellant.
 Michael Ernest Avakian, North Springfield, Va. (Baker Armstrong Smith, Atlanta, Ga., Albert Q. Taylor, Jr., Leatherwood, Walker, Todd & Mann, Greenville, S.C., on brief), for appellees Stevens People and Friends for Freedom.
 John V. Hunter, III, Raleigh, N.C. (Hunter, Wharton & Howell, Raleigh, N.C., on brief), for appellees John G. Hutchens and J. P. Stevens Emp. Ed. Committee.
 Johnathan R. Harkavy, Smith, Patterson, Follin, Curtis, James & Harkavy, Greensboro, N.C., Arthur M. Goldberg, Gen. Counsel, Amalgamated Clothing and Textile Workers Union, AFL-CIO, CLC, Washington, D.C., amicus curiae.
 Before BUTZNER, PHILLIPS and MURNAGHAN, Circuit Judges.
 BUTZNER, Circuit Judge:
 
 
 1
 In these consolidated cases, the Secretary of Labor seeks to enforce subpoenas issued to several individuals and two committees of the J. P. Stevens Co., Inc., which were formed to oppose unionization of Stevens' textile mills. The Secretary issued the subpoenas as part of an investigation concerning possible violations of § 203 of the Labor Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 433. This section, among other things, requires disclosure of information about activities undertaken to persuade employees with respect to the exercise of their collective bargaining rights.
 
 
 2
 The district courts quashed the subpoenas in their entirety on the ground that enforcement would have a chilling effect on the first amendment rights of the committees, their members, and contributors. We believe that disclosure of information identifying Stevens' non-supervisory employees is unwarranted. We conclude, however, that the district courts should have enforced the subpoenas with respect to the other information the Secretary sought.
 
 
 3
 * Appellees in 80-1490 are Stevens People and Friends for Freedom and one of its officers. The Secretary issued a subpoena to the committee requesting lists of contributors, records of receipts and disbursements, bank statements, cancelled checks, correspondence records, minutes of meetings, and any agreements to assist Stevens, the Stevens Employees Education Committee, or the North Carolina Fund for Individual Rights. The subpoena served on the officer required her to testify concerning possible violations of the LMRDA.
 
 
 4
 Upon the Secretary's petition for enforcement, pursuant to 29 U.S.C. § 521, the district court quashed the administrative subpoenas in their entirety because they would have a chilling effect on appellees' first amendment rights. While acknowledging that the Secretary is required to investigate violations of the Act, the court held that the Secretary could not obtain any information from the committee or its officer until he filed a suit to require a report of persuader activities as provided by the Act. At that time, the court noted, the government could rely on "those sanctions that the law normally places upon those who file deliberately falsified reports to the government."
 
 II
 
 5
 Appeals 80-1715 and 80-1716 were consolidated in the District Court for the Eastern District of North Carolina.[1] Appellees are the J. P. Stevens Employees Education Committee,[2] an anti-union association of employees at a Stevens mill, several persons associated with the committee, and a solicitor of funds for the committee.
 
 
 6
 The Secretary issued subpoenas to the committee and the individuals requesting information similar to that requested from Stevens People and its officers. After the appellees refused to respond, the Secretary filed suit seeking enforcement of the subpoenas.
 
 
 7
 The district court rejected the appellees' statutory contention that since they have no disclosure duties under the LMRDA, they cannot be investigated by the Secretary. It ruled that "(e)ven if the respondents had no duty to disclose, the Secretary still may subpoena and investigate them under his broad powers to ferret out relevant information wherever it may be found." Further, the court held that the Secretary's investigative powers are so broad "that he need not first establish that a contribution or agreement (between the committee and Stevens) in fact exists before he investigates it." 495 F.Supp. at 558.
 
 
 8
 The court next addressed the appellees' claim that enforcement of the subpoenas would infringe their first amendment rights. It found that the appellees "have shown a 'reasonable probability' that economic and physical reprisals will occur upon disclosure of membership and contributors list to the Secretary." 495 F.Supp. at 561.[3] It also ruled that "(t)he information sought by the Secretary is strictly tailored to the purpose of determining whether violations of the LMRDA have occurred." 495 F.Supp. at 562.
 
 
 9
 The court then balanced the appellees' "freedom to come together in privacy for the purpose of developing their ideas and to receive confidential contributions" against "(t)he government interest in fairness and above-board dealings during a labor conflict." 495 F.Supp. at 564. It held that "(t)he rough equivalence in weight of the competing interests when balanced against each other leads the court to conclude that the (appellees') First Amendment interests must prevail." 495 F.Supp. at 565. Consequently, the court granted the motion to quash the subpoenas in their entirety.
 
 III
 
 10
 At the outset, we address the appellees' contention that even if the subpoenas were properly issued, their enforcement is now a moot issue. The Secretary recently informed the J. P. Stevens Employees Education Committee that it is required to file a report under the LMRDA. This request for a report, the committee contends, is an admission that no further investigation is required. Further, the committee maintains that this case is moot because the Secretary has already obtained information from its bank account that discloses the identity of some committee contributors.
 
 
 11
 We cannot agree that these developments render the enforcement issue moot. While the bank records have provided the Secretary with some of the information requested in the subpoenas, he continues to seek information about contributions not disclosed by these records. The Secretary's determination, based on the bank records, that the committee is required to disclose its persuader activities does not end his investigation of possible violations of the Act by Stevens or other persons who also may be required to file reports.
 
 
 12
 Closely related to the appellees' contention that enforcement has been mooted is their assertion that enforcement of the subpoenas is unnecessary. The Secretary acknowledged in his brief that Stevens should be able to provide copies of its agreements, if any, with the committees. Therefore, the appellees contend that enforcement should be denied because the Secretary has other sources for the information he seeks. In support of their position, they rely on International Union, UAW v. National Right to Work Legal Defense and Education Foundation, Inc., 590 F.2d 1139 (D.C.Cir.1978).
 
 
 13
 In International Union, UAW, the court vacated discovery sanctions imposed under Rule 37 of the Federal Rules of Civil Procedure and remanded the case for determination of whether the union, which was seeking the names of contributors to the foundation, had other reasonable sources of information. The court did not decide whether the information ultimately would be subject to discovery. 590 F.2d at 1152-53 and n.19. Also, the court held that there was no private right of action under § 203 of the LMRDA, noting that Congress had conferred exclusive enforcement authority on the Secretary of Labor. Here, in contrast, we are not reviewing the scope of the Rules' discovery provisions or the right of a private litigant to enforce § 203. The Secretary's investigatory powers are conferred by § 601 of the Act, 29 U.S.C. § 521, and are not circumscribed by the Civil Rules. Moreover, unlike a union, the Secretary is authorized to institute necessary suits to enforce the Act. Therefore, International Union, UAW, is not persuasive precedent.
 
 
 14
 We conclude that because the information sought by the Secretary is relevant to his continuing investigation, the issue of enforcement is neither moot nor unnecessary.
 
 IV
 
 15
 Before considering the appellees' constitutional challenge to the subpoenas, we must first address their statutory challenge. See Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J.). The appellees claim that associations of employees cannot be required under § 203(b) of the Act to disclose their persuader activities and that therefore they have no duty to disclose the subpoenaed information. Section 203(b), 29 U.S.C. § 433(b), requires, in part:
 
 
 16
 Every person who pursuant to any agreement or arrangement with an employer undertakes activities...
 
 
 17
 (1) to persuade employees to exercise or not to exercise ... the right to organize and bargain collectively through representatives of their own choosing; or
 
 
 18
 (2) to supply an employer with information concerning the activities of employees ... in connection with a labor dispute...
 
 
 19
 shall file ... a report with the Secretary...."
 
 
 20
 Section 203(a), 29 U.S.C. § 433(a), requires a similar report from an employer who, among other things, enters into agreements or pays money "to any of his employees, or any group or committee of such employees" for persuader activities.
 
 
 21
 Person is defined in 29 U.S.C. § 402(d) to include "one or more individuals, labor organizations, partnerships, associations, corporations ... (and) unincorporated organizations ...." Despite this broad definition of "person," appellees contend that § 203(b) is not applicable to them. They maintain that the legislative history shows that Congress intended through this disclosure provision to prevent improper practices by labor organizations, employers, and labor relations consultants and not to regulate or monitor the activities of employee associations. See Senate Committee on Labor and Public Welfare, S.Rep. No. 86-187, 86th Cong., 1st Sess. (1959), reprinted in (1959) U.S.Code Cong. & Admin.News 2318, 2327. Further, they note that in 1979 the Committee on Education and Labor of the House of Representatives failed to approve a bill which would have expressly given the Secretary power to require reports from certain employee associations. H.R. 788, 96th Cong., 1st Sess. (1979). It would be unnecessary, they contend, to amend the Act to apply to an "association of employees of an employer" if the statute already required disclosure of persuader activities by these groups.
 
 
 22
 The Secretary contends that the committees are persons as defined in 29 U.S.C. § 402(d) and may be required to report their persuader activities. But quite apart from this, he states that he is conducting an investigation to determine if Stevens, any of its agents, or any other persons have violated or are about to violate any provision of the LMRDA. He maintains that even if appellees are not required to report, he did not exceed his broad investigatory powers under § 601 of the Act in issuing the subpoenas.[4]
 
 
 23
 These are not appropriate cases for deciding whether an employees' committee may be required to file the reports specified in the Act. For the purpose of these appeals, it is sufficient to observe that the appellees' argument confuses the duty to report with the Secretary's authority to investigate possible violations of the Act. Section 601 authorizes the Secretary to conduct an investigation whenever "he believes it necessary in order to determine whether any person has violated or is about to violate" the reporting and disclosure provisions of the Act. It also incorporates § 9 of the Federal Trade Commission Act, 15 U.S.C. § 49, which empowers the Secretary to require by subpoena testimony and documentary evidence relating to any matter under investigation.
 
 
 24
 Congress granted the Secretary broad powers of investigation in order to facilitate enforcement of the Act without resort to unnecessary litigation. Consequently, the Secretary may initiate an investigation without probable cause to believe that the Act has been violated. See United States v. Budzanoski, 462 F.2d 443, 451 (3d Cir. 1972); International Brotherhood of Teamsters v. Wirtz, 346 F.2d 827, 830-831 (D.C.Cir.1965); Goldberg v. Truck Drivers Local Union No. 299, 293 F.2d 807, 811-12 (6th Cir. 1961). He is not required to first determine that appellees have violated a duty to disclose nor must he rely exclusively on the sanctions provided for non-disclosure in 29 U.S.C. § 439. The Secretary's administrative powers of investigation have been likened to a grand jury, which unlike a court, "does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." United States v. Morton Salt Co., 338 U.S. 632, 642-43, 70 S.Ct. 357, 363-64, 94 L.Ed. 401 (1950).
 
 
 25
 The Secretary's subpoena power is not restricted to the individuals or organizations being investigated. See Local 57, International Union of Operating Engineers v. Wirtz, 326 F.2d 467 (1st Cir. 1964). The appellees may be required to produce information relevant to the Secretary's investigation of any suspected violations of the Act. As stated in Goldberg v. Battles, 196 F.Supp. 749, 754 (E.D. Pa. 1961), aff'd per curiam, 299 F.2d 937 (3d Cir. 1962):
 
 
 26
 Section 601(a) empowers the Secretary to question any person he may deem necessary to enable him to determine the facts relative to the violation. The language of the statute shows that Congress also intended to give the Secretary of Labor the authority to question persons other than those directly charged with duties and responsibilities under the Act ...
 
 
 27
 The Supreme Court has stated in a similar context that "it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." United States v. Morton Salt Co., 338 U.S. 632, 652, 70 S.Ct. 357, 368, 94 L.Ed. 401 (1950). The Secretary's subpoenas satisfy these requirements.
 
 
 28
 We therefore conclude that, except for the limitation on the Secretary's authority which we discuss in Part V, the Secretary acted within his statutory powers in issuing these subpoenas.
 
 V
 
 29
 The appellees contend that enforcement of the subpoenas would infringe their privacy of association and right of advocacy which are guaranteed by the first amendment. In support of their position, the appellees introduced evidence that satisfied both district courts that disclosure of the identities of their members and contributors would have a chilling effect on their associational rights.
 
 
 30
 We accept the district court's findings about the chilling effects of disclosure, and with this factual premise established, we will apply the governing principles of law. In NAACP v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), and subsequent cases, the Supreme Court has recognized that compelled disclosure of affiliation with groups engaged in advocacy may constitute an effective restraint on freedom of association. E.g., Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (campaign contributor lists); Gibson v. Florida Legislative Investigation Committee, 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963) (membership lists); Bates v. Little Rock, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960) (membership lists and financial contributions).
 
 
 31
 In Buckley v. Valeo, 424 U.S. 1, 64-65, 96 S.Ct. 612, 656, 46 L.Ed.2d 659 (1976), the Court summarized the general principles for ascertaining whether compelled disclosure can be justified:
 
 
 32
 We long have recognized that significant encroachments on First Amendment rights of the sort that compelled disclosure imposes cannot be justified by a mere showing of some legitimate governmental interest. Since NAACP v. Alabama we have required that the subordinating interests of the State must survive exacting scrutiny. We also have insisted that there be a "relevant correlation" or "substantial relation" between the governmental interest and the information required to be disclosed. ... This type of scrutiny is necessary even if any deterrent effect on the exercise of First Amendment rights arises, not through direct government action, but indirectly as an unintended but inevitable result of the government's conduct in requiring disclosure.
 
 
 33
 The district courts found a deterrent effect on the exercise of the appellees' first amendment rights through the unintended but inevitable results of government disclosure, despite administrative and statutory safeguards to retain the confidentiality of the information. Therefore, scrutiny of the government's interest in the information it seeks is required even though there has been no proof of direct government action to deter the appellees' exercise of their first amendment rights.
 
 
 34
 Unlike the district courts, we believe that application of the principles stated in Buckley requires separate consideration of the different types of information the Secretary seeks.
 
 
 35
 The subpoenas were issued against a background of labor-management strife over organizational efforts at Stevens' mills. Viewed in this context, it is apparent that the requested information falls roughly into three classes. The first pertains to information that would disclose the names of non-supervisory employees at Stevens' mills; the second consists of lists of other contributors; and the third includes all other information. With respect to all classes of information, the government's interest is enforcement of § 203 of the Labor Management Reporting and Disclosure Act, but the magnitude and nature of its interests differs with respect to the type of information it seeks.
 
 
 36
 * Section 603(b) of the Act, 29 U.S.C. 523(b), contains a significant limitation on the Secretary's powers with respect to non-supervisory employees of an industry. This section provides that the Act shall not be construed "to impair or otherwise affect the rights of any person under the National Labor Relations Act." Among the rights the Labor Relations Act assures non-supervisory employees are the right to refrain from any union organizational activities and the right to engage in concerted activities for their mutual aid. 29 U.S.C. § 157.
 
 
 37
 The evidence discloses that the committees were formed by non-supervisory employees to oppose unions at Stevens' mills. Their right of opposition and their right to associate for achievement of their goal is secured by § 157 of the Labor Act. Compelled disclosure of their identities, the district courts found, will infringe their rights of association.
 
 
 38
 We therefore conclude that with respect to Stevens' nonsupervisory employees, the Secretary has not satisfied the requirements for compelled disclosure set forth in Buckley v. Valeo, 424 U.S. 1, 64-65, 96 S.Ct. 612, 656, 46 L.Ed.2d 659 (1976). The very terms of the statute under which he proceeds contain limitations on his powers with respect to non-supervisory employees who are engaged in an organizational campaign. For this reason, the Secretary cannot meet Buckley's requirement that he show a substantial relation between his interest in enforcing the Act and information identifying Stevens' non-supervisory employees who are associated to exercise the rights assured them by § 157. Accordingly, on remand, the district court should limit the scope of the subpoenas to preclude disclosure of the names of Stevens' non-supervisory employees who are associated with the appellees' committees or who contribute to their treasuries. Our exclusion of these employees is consistent with NAACP v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); Gibson v. Florida Legislative Investigation Committee, 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963); and Bates v. Little Rock, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960). In these cases, too, the respective inquisitors were unable to show a substantial relation between the governmental interests and the information they sought.
 
 B
 
 39
 We turn next to consideration of the second type of information the Secretary seeks. This, as we have mentioned, is information about individuals (other than Stevens' non-supervisory employees) and organizations who have contributed money to the appellees. Broadly speaking, the subpoenas seek information that would disclose the committees' financial contacts, if any, with Stevens, with other organizations, and with individuals who oppose organizational efforts at Stevens' mills. Undoubtedly, as the district courts found, compelled production of this information has the potential for deterring legitimate contributions to the appellees, and to this extent it creates the possibility of infringement of the appellees' first amendment rights of association and advocacy. Nevertheless, the Supreme Court has "acknowledged that there are governmental interests sufficiently important to outweigh the possibility of infringement, particularly when the 'free functioning of our national institutions' is involved." Buckley v. Valeo, 424 U.S. 1, 66, 96 S.Ct. 612, 657, 46 L.Ed.2d 659 (1976). These interests include the government's power to inform itself through investigations "in order to act and protect its legitimate and vital interests." Gibson v. Florida Legislative Investigation Committee, 372 U.S. 539, 544, 83 S.Ct. 889, 892, 9 L.Ed.2d 929 (1963).
 
 
 40
 Our analysis of the governmental interests that the Secretary seeks to vindicate begins with the legislative history of the reporting requirements of the Act. The Senate Committee explained the necessity for compelled disclosure in the following excerpt from its report:[5]
 
 
 41
 The committee notes that in almost every instance of corruption in the labor-management field there have been direct or indirect management involvements. The report of the McClellan committee describes management middlemen flitting about the country on behalf of employers to defeat attempts at labor organization. In some cases they work directly on employees or through committees to discourage legitimate organizational drives or set up company-dominated unions. These middlemen have been known to negotiate sweetheart contracts. They have been involved in bribery and corruption as well as unfair labor practices. The middlemen have acted, in fact if not in law, as agents of management. Nevertheless, an attorney for the National Labor Relations Board has testified before the McClellan committee that the present law is not adequate to deal with such activities.
 
 
 42
 The committee believes that employers should be required to report their arrangements with these union-busting middlemen. Further, the Committee on Labor and Public Welfare has received evidence in prior hearings showing that large sums of money are spent in organized campaigns on behalf of some employers for the purpose of interfering with the right of employees to join or not to join a labor organization of their choice, a right guaranteed by the National Labor Relations Act. Sometimes these expenditures are hidden behind committees or fronts; however the expenditures are made, they are usually surreptitious because of the unethical content of the message itself....
 
 
 43
 Similarly, expenditures have been made in the past by employers surreptitiously and through labor spies, to obtain information about employees and unions. This type of activity certainly is not conducive to sound and harmonious labor relations.
 
 
 44
 The findings of the Senate Committee are reflected in the Act's declaration of findings, purposes, and policy, 29 U.S.C. § 401(c):
 
 
 45
 The Congress ... finds and declares that the enactment of this chapter is necessary to eliminate or prevent improper practices on the part of labor organizations, employers, labor relations consultants, and their officers and representatives which distort and defeat the policies of the Labor Management Relations Act, 1947 ...
 
 
 46
 Among the remedial measures enacted by Congress to implement its declaration of policy was § 203, which deals with the subject matter of the Secretary's present investigation.
 
 
 47
 The Act's legislative history, congressional declaration, and § 203 demonstrate that the Secretary seeks to vindicate important governmental interests. The contributions which the Secretary seeks to investigate perhaps are benign, but they may be of the type that Congress has denounced. Through his investigation the Secretary seeks to determine whether these contributions are from sources that are required to report under § 203. In this respect these appeals differ from Bates v. Little Rock, 316 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960), where the facts conclusively established that contributors offended no law.
 
 
 48
 Moreover, these governmental interests, which the Secretary asserts, are substantially related to the information that he seeks. It is this substantial relationship between the legitimate governmental interest in the source and purpose of the contributions paid to appellees and the information the Secretary seeks about these contributions that brings this case within the general principles set forth in Buckley v. Valeo, 424 U.S. 1, 64, 96 S.Ct. 612, 656, 46 L.Ed.2d 659 (1976), where the Court upheld a statutory requirement for disclosure of the identity of contributors to political campaigns. Also, it is this substantial relationship that distinguishes these appeals from Gibson v. Florida Legislative Investigation Committee, 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963), Bates v. Little Rock, 316 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960), and NAACP v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), where no similar relationship was established.
 
 
 49
 Accordingly, we conclude that tested by the principles reiterated in Buckley, the subpoenas for lists of contributors, other than Stevens' non-supervisory employees, are constitutionally valid.
 
 C
 
 50
 Consideration of the other business and financial records the Secretary seeks need not detain us inasmuch as the district court may provide for the deletion of the names of Stevens' non-supervisory employees. This type of information is routinely furnished in government investigations of possible violations of the law, and the appellees have adduced no evidence that its disclosure will infringe their first amendment rights. Indeed, similar information was produced in the investigation under consideration in NAACP v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), and ultimately resistance was offered only to the production of membership lists. For the reasons stated in Part B, dealing with contributors, we believe that the Secretary is entitled to subpoena the business records and minutes of the committees and to question the individuals associated with the committees and the individual who solicited funds.
 
 VI
 
 51
 In summary, our exclusion of the disclosure of the names of Stevens' non-supervisory employees who are either members of, or contribute to, the committees sufficiently protects the associational rights of the appellees. The governmental interest served by the Secretary's statutory investigation and the relationship of this interest to the information he seeks justify enforcement of the subpoenas subject to the restriction we have mentioned.
 
 
 52
 We recognize, however, that these proceedings are part of a broader investigation that may disclose that some non-supervisory employees are engaged in activities that subject them to the requirements of the Act. Also, future events may establish that enforcement of the subpoenas does in fact deter contributors from supporting the committees because of economic or other forms of reprisal. Developments such as these would allow either the appellees or the Secretary to seek in the district courts restriction or amplification of these and subsequent subpoenas. Cf. Buckley v. Valeo, 424 U.S. 1, 74, 96 S.Ct. 612, 661, 46 L.Ed.2d 659 (1976).
 
 
 53
 We affirm the judgments of the district courts to the extent that they deny enforcement of those parts of the subpoenas that require disclosure of the names of Stevens' non-supervisory employees. We vacate the judgments to the extent that they deny enforcement of the subpoenas with respect to the other information that the Secretary seeks. The cases are remanded to the respective district courts for further proceedings consistent with this opinion. Each party shall bear its own costs.
 
 
 
 [1]
 The opinion of the district court is reported as Marshall v. J. P. Stevens Employees Educ. Comm., 495 F.Supp. 553 (E.D.N.C.1980)
 
 
 [2]
 The historical background of the committee's formation and its purposes are described in J. P. Stevens Employees Educ. Comm. v. NLRB, 582 F.2d 326, 328 (4th Cir. 1978)
 
 
 [3]
 The Secretary subpoenaed the committees' lists of contributors but not their membership lists. The Supreme Court, however, has "not drawn fine lines between contributors and members but (has) treated them interchangeably." Buckley v. Valeo, 424 U.S. 1, 66, 96 S.Ct. 612, 657, 46 L.Ed.2d 659 (1976)
 
 
 [4]
 Section 601 of the Act, 29 U.S.C. § 521, provides in part:
 The Secretary shall have power when he believes it necessary in order to determine whether any person has violated or is about to violate any provision of this chapter (except subchapter II of this chapter) to make an investigation and in connection therewith he may enter such places and inspect such records and accounts and question such persons as he may deem necessary to enable him to determine the facts relative thereto. The Secretary may report to interested persons or officials concerning the facts required to be shown in any report required by this chapter and concerning the reasons for failure or refusal to file such a report or any other matter which he deems to be appropriate as a result of such an investigation.
 
 
 [5]
 Senate Committee on Labor and Public Welfare, S. Rep. No. 86-187, 86th Cong., 1st Sess. (1959), reprinted in (1959) U.S.Code Cong. & Admin.News 2318, 2326-2327