# In the
# United States Court of Appeals
## For the Seventh Circuit

---

No. 05-2478

ELAINE L. CHAO, Secretary of Labor,

*Plaintiff-Appellee,*

*v.*

LOCAL 743, INTERNATIONAL
BROTHERHOOD OF TEAMSTERS,
AFL-CIO,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 1749—**Robert W. Gettleman**, *Judge.*

---

ARGUED NOVEMBER 10, 2005—DECIDED OCTOBER 31, 2006

---

Before FLAUM, *Chief Judge*, and RIPPLE and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge.* The Secretary of the United States Department of Labor commenced this action seeking enforcement of a subpoena duces tecum served upon the respondent labor union, Teamsters Local 743 ("the Union"). The Union refused to comply with the subpoena, arguing that the Secretary's request was not authorized under the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 401 *et seq*. The district court

granted the Secretary's petition for enforcement. The Union appeals, and we affirm.

## I. Background

In October 2004 the Union scheduled and attempted to conduct the triennial election of its officers required by 29 U.S.C. § 481(b). One of the candidates for Union president was Richard Berg. On October 16, the day the mail ballots were in the process of being counted, a written protest from Berg, dated October 14, arrived at the Union's offices. It was Berg's thirteenth election protest. In it Berg sought to have the election voided on the ground that not all Union voters requesting ballots had received them, and he called for a new election. By the end of the day on October 16, the election officer overseeing the tally had set aside and challenged approximately 180 ballots for a variety of reasons. At this point, Berg allegedly led the incumbent presidential candidate, Robert Walston, by seven votes. It was the election officer's intention to complete the final vote count and resolve the challenges to the suspect ballots on October 19, three days later.

During the intervening three-day period, the Union's executive board met and decided to void the election on the basis of Berg's preelection protest number thirteen. The issue of the challenged ballots was not resolved, the original election officer was removed from his position, and the Union retained a different election officer to oversee and conduct a new election. The second election was held two months later, in December 2004, and there was a 63% increase in the number of ballots received compared to the total received in the October election. Berg lost his bid for the presidency to Walston by a total of 394 votes.

Berg then filed a complaint with the Secretary of the Department of Labor, requesting that the Department investigate the October 2004 tally, finish counting the

ballots from the original election, certify the winner of that election as the president, and void the December 2004 election. Despite his original protest to the October election, it was now apparently Berg's contention that the October election was halted only because the incomplete vote totals of October 16 gave rise to fear among the incumbent officers that Berg might actually win the presidency.

The Department of Labor opened an investigation in response to Berg's complaint and issued a subpoena duces tecum to the Union, pursuant to 29 U.S.C. § 521, seeking certain records related to the October election.[1] The Union refused to comply, arguing that because the October election had never been completed, any investigation concerning it properly fell within Title I of the LMRDA, 29 U.S.C. §§ 411-415, which is enforced by individual union members and not the Department of Labor. The Secretary disagreed, and this action for enforcement of the subpoena followed. The district court ordered the subpoena enforced. The Union appealed, unsuccessfully moving for a stay in district court and in this court.

## II.  Discussion

### A.  Structure of the LMRDA and the Department's Investigatory Power

The LMRDA was enacted to "protect the rights of rank-and-file members to participate fully in the operation of their union through processes of democratic self-government, and, through the election process, to keep the union

---

[1] The subpoena sought the Union's records relating to visits by a trustee/business agent of Local 743 to one of its worksites during the time preceding the October election, dues payment history information used to determine Union member eligibility to vote in the October election, and current contact information for 348 members of the Union.

leadership responsive to the membership." *Wirtz v. Hotel, Motel & Club Employees Union, Local 6*, 391 U.S. 492, 497 (1968). To this end, the LMRDA contains several subdivisions dealing with numerous facets of both internal union affairs and labor-management relations. *Wirtz v. Local 153, Glass Bottle Blowers Assoc., AFL-CIO*, 389 U.S. 463, 469 (1968). Three sections of the LMRDA are particularly relevant to the issue on appeal.

### 1.  Title I of the LMRDA

Title I of the LMRDA, also referred to as subchapter II of the Act, is entitled "Bill of Rights of Members of Labor Organizations," and is found at 29 U.S.C. §§ 411-415. It provides in pertinent part that every member of a labor organization shall have the right "to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules" contained in the organization's constitution and bylaws. 29 U.S.C. § 411(a)(1). Union members also have the right under Title I to meet and assemble freely with other members, support candidates of their choice, and express their opinions concerning candidates for union office. 29 U.S.C. § 411(a)(2). Title I also prohibits a union from disciplining a member (except for nonpayment of dues) without service of written charges and the provision of a full and fair hearing after reasonable notice. 29 U.S.C. § 411(a)(5). With respect to enforcement of these rights, Title I provides in part as follows: "Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate." 29 U.S.C. § 412.

## 2. Title IV of the LMRDA

Title IV (also known as subchapter V) of the LMRDA, 29 U.S.C. §§ 481-483, is entitled "Elections." Title IV's function in furthering the overall goals of the LMRDA is "to insure 'free and democratic elections'" for union officers. *Glass Bottle Blowers Assoc.*, 389 U.S. at 469. Among the requirements of Title IV are that every local labor organization must hold an election of officers at least once every three years; that the union must permit the distribution of campaign literature without discrimination for or against any candidate; that every bona fide candidate shall have the right to inspect a union's mailing list of members; that "adequate safeguards to ensure a fair election" be provided, including the right of any candidate to have an observer at the polls and at the counting of ballots; that every member in good standing shall have the right to vote, to hold office, and to support the candidate of his or her choice without fear of discipline or reprisal; and that the union and the employer are generally prohibited from spending money to promote the candidacy of any particular person. 29 U.S.C. § 481(c), (e), (g).

Title IV contains a civil enforcement provision that outlines the following procedures as relevant to the issue here: (1) any member of a union who believes that Title IV has been violated, and who has first exhausted the remedies available to him or her under the labor organization's constitution or bylaws may file a complaint with the Secretary; (2) the "challenged election" shall be presumed valid pending investigation by the Secretary; (3) the Secretary shall investigate the complaint, and "if he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied, he shall . . . bring a civil action against the labor organization . . . to set aside the invalid election . . ."; and (4) if a court finds that a violation of § 481 "may have affected the outcome of an election," the court "shall declare the election, if any, to be

void and direct the conduct of a new election . . . ." 29 U.S.C. § 482. Finally, Title IV also contains a provision, relied upon by the Union in this case, stating that "[t]he remedy provided by this subchapter for challenging an election already conducted shall be exclusive." 29 U.S.C. § 483.

### 3. The Secretary's Investigative Powers under 29 U.S.C. § 521

The subpoena power of the Secretary of Labor derives from 29 U.S.C. § 521(a) (also commonly referred to as § 601 of the LMRDA), which provides in relevant part as follows:

> The Secretary shall have power when he believes it necessary in order to determine whether any person has violated or is about to violate *any provision of this chapter (except subchapter II of this chapter)* to make an investigation and in connection therewith he may enter such places and inspect such records and accounts and question such persons as he may deem necessary to enable him to determine the facts relative thereto. (Emphasis added.)

In general, an administrative agency's subpoena meets the requirements for enforcement if (1) the inquiry is within the authority of the agency, (2) the demand is not too indefinite, and (3) the information sought is reasonably relevant to the investigation. *United States v. Morton Salt Co.*, 338 U.S. 632, 653 (1950); *EEOC v. Quad/ Graphics, Inc.*, 63 F.3d 642, 645 (7th Cir. 1995). An administrative agency's subpoena power is intended to permit the agency to "investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Morton Salt Co.*, 338 U.S. at 642-43. In the statute quoted above, the only relevant limitation on the otherwise broad powers conferred by § 521 is that the power to investigate possible violations of the LMRDA does not

extend to violations of "subchapter II," i.e., Title I, of the Act.

## B. Analysis

### 1. The Distinction Between Investigations and Enforcement Actions

The Union's principal argument against enforcement of the subpoena is that the investigation into Berg's complaint, and the subpoena issued in furtherance of it, is an investigation into possible violations of Title I and thus beyond the authority conferred upon the Secretary by § 521. In attempting to draw a definitional boundary around the concept of a "Title I violation" as it pertains to the limitation on investigatory power contained in § 521, the Union relies on the statutory language describing the circumstances under which the Secretary is authorized to bring a Title IV *enforcement action*. Proceeding from this premise, the Union concentrates its argument on whether the October election was "completed" or not. In essence, the Union claims that any possible violation of the LMRDA that is related to an election that is "never completed" is necessarily and exclusively a Title I violation that lies beyond the investigatory power conferred by § 521. To support this position, the Union relies on language in § 483 stating that the civil enforcement action by the Secretary for violations of Title IV shall be the "exclusive" remedy as to an election "already conducted." Thus, the argument goes, if an election has not been "already conducted," enforcement power rests exclusively with union members pursuant to Title I, and the Secretary not only has no authority to bring a civil enforcement action seeking nullification of the election results, but *also* has no authority to investigate pursuant to § 521.

The first and principal answer to the Union's argument is that it confuses the Secretary's broad power to investigate

with her more limited authority to bring an action in federal court seeking redress for violations of Title IV of the LMRDA. The present case is not a civil enforcement action, and we need not concern ourselves with whether the remedy of an enforcement suit (*hypothetical* at this point in the investigation) would properly rest with the Secretary or an individual union member. In the absence of a civil enforcement action, there is no inherent textual reason to resort to § 483, or any other provision of Title IV, as a means to define the limitation on the Secretary's investigatory power contained in § 521. The present suit is an action for enforcement of a subpoena duces tecum that is, at least at this point, unrelated to any enforcement action that might possibly be brought under §§ 482 and 483.[2]

Section 521 contains one—and only one—limitation on the Secretary's power to launch an investigation (including issuing subpoenas), and that limitation excludes possible violations of Title I. Indeed, the power to investigate conferred by § 521 is not limited to Title IV violations, is not limited to elections, and certainly is not limited to elections "already conducted." It is also not limited to investigations into conduct that could possibly form the basis for a civil enforcement action in federal court. The Union would like us to read the powers of § 521 as coterminous with those of § 482 and hold that a subpoena issued pursuant to § 521 is

---

[2] Because this is not a § 482 enforcement action, we have no occasion to express an opinion as to whether such actions are limited to Title IV violations relating to elections that have been "already conducted." *See* 29 U.S.C. § 483. Neither do we express an opinion as to the Union's implied premise that the October election does not qualify as being "already conducted" for purposes of § 483. *Compare McDonough v. Local 825, Int'l Union of Operating Eng'rs*, 470 F.2d 261, 264 (3d Cir. 1972), *with Crowley v. Local No. 82, Furniture & Piano Moving*, 679 F.2d 978, 992-93 (1st Cir. 1982), *rev'd on other grounds*, 467 U.S. 526 (1984).

valid only if the Secretary simultaneously has statutory authority to bring an action under § 482 stemming from the same conduct. But such a construction would be to render § 521 largely superfluous as redundant of the power to investigate member complaints of Title IV violations conferred by 29 U.S.C. § 482.

Instead, § 521 grants the Secretary broad authority to investigate "whether any person has violated or is about to violate any provision of this chapter" (meaning *any* provision of the LMRDA) other than Title I, regardless of whether a civil action in federal court is expected or even authorized. There is simply nothing in § 521 that requires the Secretary to demonstrate a basis for federal court jurisdiction over a hypothetical Title IV enforcement action in order to commence and pursue an investigation into possible non-Title I violations of the LMRDA. In short, the statutory limitations on an enforcement action pursuant to §§ 482 and 483 are not the measuring stick by which the Secretary's § 521 power to investigate (and subpoena) is evaluated, and the limiting reference to Title I made in § 521 is not defined by the enforcement power conferred by §§ 482 and 483. The scope of the investigative authority bestowed by 29 U.S.C. § 521 is consequently not limited to elections "already conducted." Indeed, we note that § 521 expressly extends investigatory power to situations in which any person "is about to" violate any provision of the LMRDA. With respect to the investigation of elections, the quoted language clearly presupposes an incomplete election process, as it would be difficult to envision a situation in which a person "is about to" violate the LMRDA in connection with an election that is fully complete.

This distinction between the broad investigatory power conferred by § 521 and the more narrowly circumscribed enforcement power conferred by § 482 has been recognized in the decisions of several of our sister circuits.

In *Marshall v. Stevens People & Friends for Freedom*, 669
F.2d 171, 176 (4th Cir. 1981), the Fourth Circuit described
the distinction as follows:

> Congress granted the Secretary broad powers of investi-
> gation [in § 521] in order to facilitate enforcement of the
> Act without resort to unnecessary litigation. Conse-
> quently, the Secretary may initiate an investigation
> without probable cause to believe that the Act has been
> violated. . . . The Secretary's administrative powers of
> investigation have been likened to a grand jury, which
> unlike a court, 'does not depend on a case or controversy
> for power to get evidence but can investigate merely on
> suspicion that the law is being violated, or even just
> because it wants assurance that it is not.' *United States
> v. Morton Salt Co.*, 338 U.S. 632, 642-43, 70 S. Ct. 357,
> 363-64, 94 L. Ed. 401 (1950).

In *Wirtz v. Local 191, International Brotherhood of
Teamsters*, 321 F.2d 445, 447-48 (2d Cir. 1963), the Second
Circuit held that while the Secretary's power to bring
an enforcement action pursuant to § 482 may be limited
to those cases in which an individual union member has
filed a complaint and done so in compliance with the
exhaustion requirements of that section, the power to
investigate possible LMRDA violations conferred by § 521
is not so limited. In other words, the Secretary's investiga-
tive power is in no manner restricted to cases in which
statutory authority to bring a Title IV enforcement ac-
tion exists:

> It may be that some or all of the limitations of [29
> U.S.C. § 482], such as the exhaustion of internal
> remedies, are relevant to the suit which that section
> authorizes; there is in [29 U.S.C. § 521] no similar
> limitation on the Secretary's power to investigate
> and report. Presumably the Secretary can bring an
> action only when a complaint has been filed by an

individual member [Section 482]. But he can investigate and report without such a complaint.

*Id*. at 448.

A similar conclusion was reached in *Holmes v. Donovan*, 796 F.2d 173, 178 (6th Cir. 1986) (citation omitted), where the Sixth Circuit held that in the LMRDA:

> [T]he Secretary was empowered to sue only under specific conditions, but the Secretary was at the same time given broad investigatory powers. *See* 29 U.S.C. § 521. That power to investigate election complaints has been held not to be subject to the exhaustion requirement of 29 U.S.C. § 482. . . . Furthermore, the Secretary may pursue violations without the issuance of a complaint by a union member.

Finally, in *Local 57, International Union of Operating Engineers v. Wirtz*, 346 F.2d 552, 554 (1st Cir. 1965), the First Circuit explained the enforcement/investigatory distinction as follows:

> Section 402 [29 U.S.C. § 482] provides for the Secretary's instituting a court action to set aside an election; his power to do so is conditioned upon the filing of a complaint by an individual union member who has exhausted his internal union remedies. Section 601 [29 U.S.C. § 521], on the other hand, authorizes the Secretary to investigate an election; his power to do so is not conditioned upon receipt of a complaint from an individual member of the union. *We perceive no conflict which is created by thus reading Section 601 as permitting the Secretary to investigate in circumstances where he could not bring suit under Section 402.* (Emphasis added.)

Section 521 thus requires that we focus on whether the Secretary's subpoena was issued in furtherance of an investigation into a Title I violation, excluded under § 521, not on whether the election was "completed" or voided prior

to completion. If the investigation is not strictly concerned with a possible Title I violation, then an investigatory subpoena is authorized by the text of 29 U.S.C. § 521, regardless of whether the activity being investigated is related to an election "already conducted" and without regard to the identity of the person or entity that might have authority to bring a hypothetical enforcement action relating to the same conduct.[3]

## 2. The Present Investigation

The impetus for the Secretary's investigation and the issuance of the subpoena was a complaint filed by Richard Berg. The complaint purports to allege "violations of Title IV of the [LMRDA]" stemming from the October 16, 2004 election that was cancelled prior to completion and requests that the Secretary "investigate our complaint under Title IV. . . ." The complaint alleges that when Berg mailed campaign literature to the addresses on the Union's mailing list, approximately 750 such mailings were returned by the postal service as undeliverable. Berg claimed that when ballots were mailed to the same addresses by the Union prior to the October election, 90 ballots sent to the previously undeliverable addresses were returned fully executed. These 90 ballots, and approximately 98 others, were set aside and challenged by the election officer, and were not included in the initial incomplete tally made on October 16, 2004, at which point Berg claims that he led the incumbent president by seven votes. The election officer proposed to rule on the challenged ballots and complete the vote count on October 19, 2004. At this point, Berg alleged, the incumbent officers realized for the first time that Berg

---

[3] We again emphasize that the issue of whether the Secretary may bring a § 482 action under the present circumstances is not properly before us and we express no opinion on the matter.

might actually win the election when the tally was completed.[4] Berg believes that during the intervening two days the incumbent officers fired the election officer and voided the entire election, not because of any preelection complaint Berg may have filed, but because they feared the result of the election. He alleged that the officers' purported reliance on his protest as a vehicle for voiding the October election was only a pretext for their true intention to stave off his inevitable victory.

The subpoena duces tecum at issue here sought Union records relating to visits by a Union business agent to one of its worksites during the time preceding the October election, dues payment history information used to determine Union member eligibility to vote in the October election, and current contact information for 348 members of the Union.

With respect to whether this subpoena is directed toward the investigation of a possible LMRDA violation lying wholly within the ambit of Title I, we first note that the rights enumerated in Titles I and IV of the LMRDA are not neatly compartmentalized into separate and distinct categories. Instead, it is well recognized that Title I and Title IV "protect many of the same rights" with respect to union elections. *Local No. 82, Furniture & Piano Moving v. Crowley*, 467 U.S. 526, 539 (1984); *Local 57*, 346 F.2d at 555. Thus, in the context of this case, the pertinent question is whether the conduct being investigated potentially implicates a Title IV violation (and therefore is within the Secretary's grant of investigatory power), and not upon

---

[4] It was Berg's view that the election officer would likely have sustained the challenge to the 90 ballots received from suspicious addresses and denied the incumbent officers' challenge to at least another 35 ballots that Berg is certain would have gone his way.

whether such conduct might *also* give rise to a Title I violation. This overlap between the rights protected by Titles I and IV and the Secretary's power to investigate in cases potentially implicating both Titles was persuasively analyzed by the First Circuit in *Local 57*:

> Appellant's second new argument is that, in view of the express exclusion of Title I violations from Section 601 [29 U.S.C. § 521], the Secretary's power to investigate the election for Title IV violations was preempted by the fact that a suspended union member . . . apparently has commenced an action in the District Court based on an alleged violation of his rights under Title I of the Act. We must reject this argument also. It rests on the *false premise that union misconduct which deprives an individual of rights guaranteed to union members by Title I may not also constitute a violation of duties imposed upon the union by Title IV.*

*Local 57*, 346 F.2d at 555 (citation omitted) (emphasis added).

We have no difficulty concluding that the allegations of Berg's complaint, and the Secretary's subsequent investigation of the October election, fall within the permissible boundaries of the investigatory power conferred by § 521. The allegation that October ballots may have been marked and returned by individuals other than those to whom they were mailed clearly implicates Title IV's requirements that "[e]ach [union] member in good standing shall be entitled to one vote," 29 U.S.C. § 481(e), and that the union is required to institute "adequate safeguards to insure a fair election," 29 U.S.C. § 481(c). The Secretary's demand for member contact information and records concerning the manner in which the union determined voter eligibility is reasonably relevant to this aspect of the investigation.

Title IV also generally prohibits the expenditure of union money to promote the candidacy of any person in an

election subject to regulation under the LMRDA. 29 U.S.C. § 481(g). The Secretary's subpoena, requesting records relating to a union employee's visits to a worksite in the period immediately preceding the October election, is relevant to an inquiry into a possible violation of that section.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*