**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 16, 2010[*]
Decided June 16, 2010

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 09-3817

| | |
|---|---|
| MARY CORNER, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 08 C 7043 |
| HILDA SOLIS, | |
| Secretary of Labor, | George W. Lindberg, |
| *Defendant-Appellee.* | *Judge.* |

**O R D E R**

Mary Corner lost her bid for president of the local chapter of her union. She attributes her defeat to problems with the election: in her view, it did not comply with Title IV of the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. §§ 481-483. But the Department of Labor ruled out irregularities that could have affected the election's

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

result, and the Secretary of Labor declined to take further action.  Corner and another union member, Janice Alexander Scott, filed this action seeking to compel the Secretary to overturn the election.  The district court declined to do so, and we affirm the judgment.

We note initially that the notice of appeal names as appellants both Corner and Scott, but is signed only by Corner.  A nonlawyer may not sign on behalf of an unrelated litigant, and thus we directed Scott to submit a signed notice of appeal if she wished to participate with Corner.  *See Lewis v. Lenc-Smith Mfg. Co.*, 784 F.2d 829, 830-31 (7th Cir. 1986).  The deadline has passed and we have received nothing from Scott in response to our order, so the appeal is dismissed as to her.

Corner ran for president of Local 7140 of the American Postal Workers Union in the spring 2008 election, which was conducted by mail.  Local 7140's election committee ran some aspects of the election, but an outside firm, SOCO Corporation, tabulated the ballots.  By SOCO's count, the winning presidential candidate received 610 votes, the runner-up received 316 votes, and Corner received 272 votes.  After the election Corner (and Scott, but we need not mention her further) filed a complaint with the union asserting that the election had violated the LMRDA.  In Corner's complaint she alleged that (1) SOCO was required to "certify" the election results, but did not, (2) union members chosen by her to monitor the election were not permitted to observe the electronic count of the ballots as it came in on a computer screen, (3) there were irregularities in the counting of the ballots, and (4) she was not given a breakdown of the election results by worksite.  After the union rejected these contentions, Corner took her complaint to the Department of Labor.  The Department investigated and notified Corner that it had not found any irregularity which could have affected the outcome of the election, and that a statement of reasons would follow.  Corner did not wait for an explanation and instead sued in the district court claiming that the Secretary's decision not to upset the election was arbitrary and capricious.

While the suit was pending, the Secretary of Labor (acting through the Department's chief of enforcement) issued the statement of reasons.  The Secretary first explained that certification of the election results was not required by the LMRDA or by the union's constitution or bylaws, though, according to the Secretary, the chair of the election committee had effectively certified the results anyway.  As to the restrictions on Corner's election observers, the Secretary's investigation revealed that they were improperly restricted and should have been allowed to watch the electronic ballot count as it came in on the computer screen.  The Department conducted a manual recount of the ballots, however, and the results varied from SOCO's tally by only a vote or two per candidate.  Since the manual recount yielded the same result as the electronic count, the Secretary concluded that the violation did not affect the outcome of the election.  The Department also investigated

the asserted irregularities in counting but found no evidence of any fraud or anomaly. Finally, with regard to Corner's request for a tally of the votes broken down by specific worksites, the Secretary again concluded that the union was not compelled by the LMRDA or by its constitution or bylaws to provide Corner with that information. Moreover, the Secretary continued, Corner had told the Department's investigator that she had received a breakdown of the vote count by worksite. The district court concluded, after reviewing the Secretary's statement of reasons, that the decision to let the election stand was not arbitrary or capricious.

Title IV of the LMRDA was enacted to foster "'free and democratic elections'" for unions. *See Chao v. Local 743, Int'l Bhd. of Teamsters, AFL-CIO*, 467 F.3d 1014, 1016 (7th Cir. 2006) (quoting *Wirtz v. Local 153, Glass Bottle Blowers Ass'n*, 389 U.S. 463, 469 (1968)). Under the statute, a union member who suspects an irregularity must first seek relief through the union, and if not satisfied with that process may file a complaint with the Secretary of Labor. 29 U.S.C. § 482(a); *Local 743*, 467 F.3d at 1016. But the Secretary may not challenge the election unless investigation confirms that a statutory violation probably affected the outcome of the election and has not been remedied already. *See* 29 U.S.C. § 482(b); *Dunlop v. Bachowski*, 421 U.S. 560, 570 (1975). When the Secretary receives a complaint but declines to challenge the election, the Secretary must issue a statement of reasons outlining the essential facts and explaining the reasons for the decision. *See Dunlop*, 421 U.S. at 573-74.

When the Secretary decides not to act on a complaint, the union member can bring suit in the district court to challenge the decision, but the court's review of the Secretary's decision is limited. *Dunlop*, 421 U.S. at 572-73; *Harrington v. Chao*, 280 F.3d 50, 56 (1st Cir. 2002). Except in "the rare case"—if, for example, the Secretary has abdicated responsibility for enforcement or "prosecuted complaints in a constitutionally discriminatory manner"—the district court is limited to deciding whether, on its face, the Secretary's statement of reasons is "so irrational as to constitute the decision arbitrary and capricious." *Dunlop*, 421 U.S. at 572-74. This is not one of those cases, so any challenges to the facts as found by the Secretary are outside the scope of judicial review. *Id.* at 573.

Viewed through that lens, Corner's arguments gain no traction. Corner first argues that SOCO, the outside firm which tabulated the ballots, was required to, and did not, certify the result. Corner did not raise this argument in the district court, *see Hicks v. Midwest Transit*, 500 F.3d 647, 652 (7th Cir. 2007), but even if it was fairly presented, we do not find arbitrary or capricious the Secretary's conclusion that SOCO was not obligated to "certify" the result. The LMRDA requires only that the votes be counted and the results published, and that unions follow their own constitution and bylaws. *See* 29 U.S.C. § 481(e). Corner bases her argument on Article 11, section 9, of the union constitution, which reads:

"Immediately upon conclusion and certification of the results of the NWIAL union election, the agency/firm shall firm [sic] over all election related materials to the election Committee. The Election Committee shall be charged with the security of all records pertaining to each election . . . ." Constitution of the Nw. Ill. Area Local, Am. Postal Workers Union, AFL-CIO, art. 11, sec. 9, *available at* http://www.nwial.com/PDF%20files/NWIAL%20Constitution%2011-08-2009.pdf. Though the first clause of section 9 uses the term "certification," we do not read the provision, which concerns the preservation of voting materials, to include a requirement that the firm certify the election. The first clause is passive: it says neither that certification must occur nor that a contractor hired to count the ballots must perform it. The constitution does mention an "Election Committee Rules and Procedures" booklet that an outside firm must follow, *see id.* sec. 6, but if that booklet contains any further requirements—Corner has not said so—we note that the booklet was never made part of the record, and, moreover, it is not part of the constitution.

Next, Corner argues that election officials improperly prevented her observers from monitoring the computer screen as the ballots were counted electronically. Candidates have the right to have an observer watch the counting of the ballots, *see* 29 U.S.C. § 481(c); 29 C.F.R. § 452.107; *Local 743*, 467 F.3d at 1016, and the computer screen would have shown if any ballots were passed over in the electronic tally. The Secretary acknowledged a violation but found no evidence of fraud or tampering, and manually verified the electronic count. Given those findings of fact, which are outside the scope of judicial review, the Secretary's conclusion that the election's outcome was unaffected is far from arbitrary and capricious.

Corner also disagrees with the Secretary's determination that during the investigation she admitted receiving a breakdown of votes by worksite and thus had gotten the tally of votes she had requested. Corner says she never made such an admission. But that is a challenge to the facts as found by the Secretary, and thus is outside the scope of judicial review. *See Dunlop*, 421 U.S. at 573.

Corner next takes issue with the Secretary's conclusion that she failed to exhaust her administrative remedies as to a number of other allegations. Specifically, the Secretary determined that Corner had not submitted to the union her allegations that information was missing from the ballots, that the union should have printed the ballots, that the chair of the election committee should not have handled the ballots, that not all ballots were mailed and only half were returned, and that there was insufficient notice about the election and the time the ballots would be retrieved. Corner argues that she did not know about these problems when she filed her complaint with the union. Exhaustion is a statutory

requirement, though, *see* 29 U.S.C. § 464(a); *id.* § 482(a), and it is not arbitrary and capricious for the Secretary to require adherence to the statute.

Finally, Corner asserts that the Department investigator did not have an "open mind" because the investigator noted that Corner had filed a complaint about a previous election. *See Corner v. U.S. Dep't of Labor*, 219 Fed. App'x 492 (7th Cir. 2007) (nonprecedential decision). This issue is not discussed in the statement of reasons because Corner never filed a complaint about it with the Department. *See* 29 U.S.C. § 482(a). But to the extent that Corner is suggesting that the investigator's comment shows the sort of constitutionally discriminatory investigation that might warrant more extensive review, it does not; noting that Corner had filed a complaint before does not suggest bias. *Cf. Liteky v. United States*, 510 U.S. 540, 555 (1994).

The appeal is DISMISSED as to Janice Alexander Scott. In all other respects, the judgment of the district court is AFFIRMED.